Patrick LUIS, Plaintiff,

v.

Thomas COUGHLIN, in his official and individual capacity; Frank Irvin, in his official and individual capacity; Edd Martin, in his individual capacity as a person; Peter Nardiello, in his individual capacity as a person; Anonymous Person 'A' (Disciplinary Hearing Officer of Wende Correctional Facility During 5/28/91–6/30/91), in his individual capacity as a person; and Paul Mecca, in his individual capacity as a person, Defendants.

92–CV–219C.

United States District Court, W.D. New York.

Aug. 5, 1996.

Frank L. Gregori, West Seneca, New York, for Plaintiff.

Dennis C. Vacco, Attorney General of the State of New York (William Lonergan, Assistant Attorney General, of counsel), Buffalo, New York, for Defendants.

## BACKGROUND

CURTIN, District Judge.

Plaintiff Patrick Luis files this action under the Civil Rights Act of 1871, 42 U.S.C. § 1983, seeking damages from defendants Thomas Coughlin, Commissioner of the New York State Department of Correctional Facilities; Frank Irvin, Superintendent at Wende Correctional Facility ("Wende") in Alden, New York; and Peter Nardiello, Edd Martin, Paul Mecca, and Anonymous Person "A," all officers at Wende, for imposing thirty-three days of "keeplock status" confinement [1] without a hearing in violation of N.Y.Comp.Codes R. & Regs. tit. 7, § 251–5.1 (1992) [hereinafter N.Y.C.R.R.] and the Due Process clause of the Fourteenth Amendment of the Constitution.

Prison Counselor Paul Mecca, Review Officer Edd Martin, and Assistant Deputy for

---

1.  " 'Keeplock' is a form of administrative segregation in which the inmate is confined to his cell, deprived of participation in normal prison routine, and denied contact with other inmates." *Gittens v. LeFevre,* 891 F.2d 38, 39 (2d Cir.1989).

Special Programs Peter Nardiello all contended that the complaint failed to allege that they did not fulfill their duties and/or that the facts alleged support no more than negligent omissions. Defendants Thomas A. Coughlin and Frank Irvin claimed that the plaintiff failed to allege personal involvement on their part.

Consequently, the defendants originally moved to dismiss the plaintiff's amended complaint for failure to state a claim upon which relief could be granted under Fed.R.Civ.P. 12(b)(6). In a decision and order dated October 28, 1994, this court denied defendants' motion, and the parties proceeded with discovery.

On June 19, 1995, the United States Supreme Court decided *Sandin v. Conner,* ——— U.S. ———, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), a case which altered the standard for evaluating cases where special confinement allegedly violates a prisoner's constitutional rights. Based on the *Sandin* decision, this court granted defendant leave to make the present motion for summary judgment pursuant to Fed.R.Civ.P. 56. In addition to their *Sandin* argument, defendants also argue that Coughlin and Irvin are protected by qualified immunity.

## FACTS

For purposes of a motion to dismiss, the factual allegations of the complaint are presumed to be true. At all times relevant to this action, Luis was incarcerated at Wende. On May 28, 1991, Luis allegedly refused a work assignment in violation of Rule 180.18, 7 N.Y.C.R.R. § 270.2(b)(26)(viii) (1988). Defendant Nardiello witnessed this refusal, placed Luis into "keeplock" status, and wrote a misbehavior report. However, he failed to report either his actions or Luis's status to the superintendent before going off duty or at any time thereafter, although he was required to do so pursuant to Departmental Rule 251–1.6(e)(1). Item 40, ¶ 13. Luis also alleges that Nardiello failed to do the paperwork necessary for Luis to obtain a timely disciplinary hearing in violation of Departmental Rule 251–4.1. 7 N.Y.C.R.R. 251–4.1 (1992).

Luis was served with charges on May 30, 1991, and was provided with a prison employee assistant, defendant Paul Mecca. Although Mecca interviewed Luis on the plaintiff's seventh day in keeplock, Mecca never advised the plaintiff that he was entitled to a disciplinary hearing within seven days, nor did Mecca ask for such a hearing on Luis's behalf, ask for the inmate's release from keeplock, or notify the Disciplinary Hearing Office of the situation. In violation of 7 N.Y.C.R.R. § 251–5.1 (1992), no disciplinary hearing on the charges was held within seven days of his segregation. Luis was released from keeplock on June 30.

Luis further charges that defendant Edd Martin, the Review Officer from May 28 to June 30, did not review the misbehavior report, forward the report to a Disciplinary Hearing Officer, review Luis's status during June of 1991, or order Luis's release after seven days in keeplock. In addition, Anonymous Defendant 'A,' the Disciplinary Hearing Officer from May 28 to June 30, did not provide a disciplinary hearing nor order Luis's release during his 33–day confinement.

Finally, Luis claims that defendants Thomas Coughlin, the Commissioner of the New York State Department of Correctional Facilities, and Frank Irvin, the Superintendent of Wende, were deliberately indifferent to and grossly negligent of their responsibilities to protect Luis's civil rights. They failed to train, supervise, and educate their subordinates properly as to their duties and responsibilities to assure compliance with departmental rules and procedures, including appointment of a correctional officer to commence a disciplinary hearing and termination of Luis's keeplock status after more than seven days without a hearing. The plaintiff further alleges that Coughlin and Irvin have taken no actions to assure that inmates put into keeplock status are provided with a disciplinary hearing within seven days. Rather, they have deliberately fostered a practice and policy in which correctional officers may disregard departmental rules so as to deprive inmates of liberty interests.

## DISCUSSION

**I. Plaintiff had no liberty interest in remaining free of keeplock confinement.**

Plaintiff's keeplock confinement occurred pursuant to 7 N.Y.C.R.R. § 251–1.6(a) (1983).

This section specifies the conditions under which an inmate may be placed in keeplock:

> Where an officer has reasonable grounds to believe that an inmate should be confined to his cell or room or housing area because he represents an immediate threat to the safety, security or order of the facility or [an] immediate danger to other persons or property, such officer shall take reasonable and appropriate steps to so confine the inmate.

Such segregation, not intended for a punitive purpose, is said to be administrative. Once an inmate is confined to administrative keeplock, New York regulations require that prison authorities follow certain procedures. For example, 7 N.Y.C.R.R. § 251–5.1(a) mandates that a disciplinary hearing must be commenced as "soon as reasonably practicable following the inmate's initial confinement, ... but in no event may it be commenced beyond seven days of said confinement without authorization of the commissioner or his designee." In addition, 7 N.Y.C.R.R. § 251–1.6(e) states that an employee who places an inmate in keeplock shall report this fact in writing to the superintendent before going off duty.

Prior to *Sandin*, some courts drew a distinction between disciplinary and administrative segregation. "Generally, restrictive confinement imposed for administrative reasons [did] not implicate a liberty interest unless the state, by enacting certain statutory or regulatory measures, creates a liberty interest in remaining in the general prison population." *Hewitt v. Helms*, 459 U.S. 460, 468–72, 103 S.Ct. 864, 869–72, 74 L.Ed.2d 675 (1983).

In *Gittens v. LeFevre*, 891 F.2d 38, 40 (2d Cir.1989), the Second Circuit held that the New York administrative keeplock regulations created a "liberty interest by using mandatory language and requiring specific substantive predicates for keeplock." Consequently, after *Gittens*, and before *Sandin*, prisoners had a liberty interest in remaining free from administrative confinement, and were deprived of this interest if held in keeplock for more than seven days without a hearing. *See Russell v. Coughlin*, 910 F.2d 75 (2d Cir.1990).

In *Sandin*, —— U.S. ——, 115 S.Ct. 2293, the Supreme Court held that the placement of a prison inmate into disciplinary confinement does not automatically implicate a liberty interest protected by the Due Process Clause. Specifically, the *Sandin* majority stated:

> The time has come to return to the due process principles of we believe were correctly established and applied in *Wolff* [*v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974)] and *Meachum* [*v. Fano*, 427 U.S. 215, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976)]. Following *Wolff*, we recognize that States may under certain circumstances create liberty interests which are protected by the Due Process Clause. But these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.

*Id.* at ——, 115 S.Ct. at 2300 (citations omitted).

The Court held that neither the Hawaii prison regulations in question, nor the Due Process Clause, afforded the inmate a protected liberty interest that entitled him to the procedural protections set forth in *Wolff*. *Id.* at ——, 115 S.Ct. at 2302. The Court further held that "[t]he regime to which [the inmate] was subjected as a result of the misconduct hearing was within the range of confinement to be normally expected for one serving an indeterminate term of 30 years to life." *Id.*

The *Sandin* ruling turned away from the methodology employed in *Hewitt*, and the cited Second Circuit cases, which had examined prison regulations to see whether "mandatory language and substantive predicates create an enforceable expectation" as to conditions of confinement. *Sandin*, —— U.S. at ——, 115 S.Ct at 2295.

In a recent decision, the Second Circuit has read *Sandin*

as calling into question the continuing validity of our cases holding that New York regulations afford inmates a liberty interest in remaining free from administrative segregation. *Rodriguez v. Phillips,* 66 F.3d 470, 480 (2d Cir.1995). And nothing in *Sandin* suggests that a protected liberty interest arises in the absence of a particular state regulation or statute that (under *Hewitt*) would create one. To prevail [plaintiff] must establish both that the confinement or restraint creates an "atypical and significant hardship" under *Sandin,* and that the state has granted its inmates, by regulation or by statute, a protected interest in remaining free from that confinement or restraint.

*Frazier v. Coughlin,* 81 F.3d 313, 317 (2d Cir.1996).

In *Frazier,* corrections officers found eight hacksaw blades in mail addressed to Frazier. A subsequent search of his cell turned up various other contraband. Frazier spent twelve days in SHU while awaiting the disposition of disciplinary proceedings. After a hearing, Frazier was moved from the SHU to a cell in the Close Supervision Unit ("CSU"). Approximately eleven months later, after filing a complaint in district court, Frazier was returned to the general population.

Applying these facts to the *Sandin* standard expressed above, the *Frazier* court found, as to Frazier's SHU confinement:

The extensive fact-finding of the district court permits us to measure Frazier's SHU claim by the standard of *Sandin.* Under that standard, Frazier has failed to demonstrate a significant deprivation of a liberty interest because he has not shown that the conditions of his confinement in the SHU were dramatically different from the "basic conditions of [his] indeterminate sentence." *Sandin,* —— U.S. at ——, 115 S.Ct. at 2301. [Plaintiff] was confined in the SHU for approximately twelve days while awaiting the disposition of disciplinary proceedings. While in the SHU, [plaintiff] was denied certain privileges that prisoners in the general population enjoy. But, as in *Sandin,* the conditions of that confinement fell "within the expected parameters of the sentence imposed by a

court of law." *Id.* And the extensive proof adduced at trial concerning the conditions of Frazier's confinement in the SHU did not demonstrate that such confinement did not amount to the "type of atypical, significant deprivation in which [New York] might conceivably create a liberty interest." *Id.* Furthermore, [plaintiff] points to no proof that might establish that "the State's action will inevitably affect the duration of his sentence." *Id.* at ——, 115 S.Ct. at 2302. Thus, [plaintiff] cannot establish a protected liberty interest in remaining in the general prison population, and dismissal of his procedural due process claim was proper.

*Frazier,* 81 F.3d at 317.

The court found as to Frazier's CSU confinement:

It is true that Frazier remained in the CSU for eleven months before being assigned to the general prison population at Shawangunk. But inmates in the CSU are confined to their cells for the same amount of time per day as inmates in the general prison population. Moreover, it was undisputed at trial that the only substantive differences between confinement in the CSU and in the general prison population are (I) that prisoners in the CSU are ineligible for certain prison jobs, and (ii) that additional corrections officers may be assigned to the CSU. . . . [T]he evidence at trial establishes that Frazier's confinement to the CSU imposed on him no "atypical and significant hardship . . . in relation to the ordinary incidents of prison life." *Sandin,* —— U.S. at ——, 115 S.Ct. at 2300.

*Id.* at 318.

The court went on to find that because Frazier had no liberty interest, it need not consider whether the process which confined prisoners to the CSU lacked necessary procedural protections. *Id.*

■ *Sandin* presents a two-part test. First, the court must determine whether the treatment of the prisoner, separate from the process he was afforded, amounted to a significant, atypical hardship so as to create a liberty interest. Second, if there is a liberty

interest, was there sufficient process in place to protect that interest. As the *Sandin* Court noted: "One must, of course, know at the start the character of the interest at stake in order to determine *then* what process, if any, is constitutionally due." *Sandin,* —— U.S. at ——, note 1, 115 S.Ct. at 2303, note 1.

■ In the present case, plaintiff charges simply that thirty-three days in keeplock without a hearing was both atypical and a significant hardship. Item 82, p. 3. Plaintiff specifically alleges, among other conditions of keeplock confinement, that he was allowed out of his cell only one hour per day, had restricted visitation, telephone, shower, and commissary privileges, and had limited access to both the regular and law libraries. Item 87, p. 2. He alleges that these restrictions imposed a hardship on him.

In support of their motion for summary judgment, defendants first offer an affidavit purporting to compare the privileges enjoyed by prisoner in keeplock status with those enjoyed by the general population. The affidavit states that an inmate placed in keeplock status has access to other inmates housed in the general population, Item 86, ¶ 6, has access to a wide array of privileges and amenities available to the general population, including access to the law library, prison medical staff, the ability to send and receive mail, and participation in both legal and non-legal visits. *Id.,* ¶ 8, 9. In addition, Luis could participate in daily physical exercise. *Id.* at ¶ 10.

Applying *Frazier,* this court must first consider whether thirty-three days in keeplock constitutes a significant, atypical hardship. Even taking plaintiff's more severe description of keeplock to be accurate for the purposes of this motion, the court concludes that it does not. If Frazier's twelve days in SHU prior to a hearing were found not to be dramatically different from the "basic conditions of [his] indeterminate sentence." *Sandin,* —— U.S. at ——, 115 S.Ct. at 2301, the court cannot see how thirty-three days in less severe keeplock confinement could be found not to fall "within the expected parameters of the sentence imposed by a court of law." *Id.* Furthermore, plaintiff in this case, like Frazier, points to no proof that might establish that "the State's action will inevitably affect the duration of his sentence." *Id.* at ——, 115 S.Ct. at 2302.

The Court of Appeals in *Frazier* also found that eleven months in CSU, which is analogous to keeplock confinement in its severity, did not implicate a liberty interest. Consequently, the Court of Appeals did not consider whether the process afforded Frazier was sufficient.

Having found no protected liberty interest, this court does not consider whether plaintiff has a claim based on defendant's failure to conduct a hearing prior to placing him in keeplock as required by 7 N.Y.C.R.R. § 251–5.1(a). The court notes that after *Sandin* and *Frazier,* the appropriate remedy for violation of hearing regulations, where the result is not an atypical, significant hardship, is a question for the state court.

Because the court finds that plaintiff had no protected liberty interest, it does not consider the affirmative defenses raised.

## CONCLUSION

For the reasons stated above, defendants' motion for summary judgment is granted. The Clerk is directed to enter judgment in favor of defendants.

The court extends its sincere thanks to plaintiff's attorney Frank Gregori, for the substantial efforts which he extended in behalf of plaintiff in this case.

So ordered.