**Howard WALLACE, Plaintiff,**

v.

**Brian CONROY, Warden of A.R.D.C. c–74 of Rikers Island East, Elmhurst, N.Y., Defendant.**

**No. 95 Civ. 9915 (PKL).**

United States District Court, S.D. New York.

Nov. 12, 1996.

---

Howard Wallace, Attica, NY, Pro se.

Marilyn Richter, Assistant Corporation Counsel, New York City, for defendant.

## MEMORANDUM ORDER

LEISURE, District Judge:

Plaintiff *pro se* Howard Wallace brought this action under 42 U.S.C. § 1983, alleging a violation of his constitutional rights in defendant's failure to complete plaintiff's transfer to state custody within ten to fourteen days of his sentencing. Defendant moved to dismiss the complaint for failure to state a claim upon which relief can be granted, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, arguing (1) that plaintiff has no protected liberty interest in being transferred within a specified period of time; (2) that plaintiff failed to state a valid claim against defendant, sued in his official capacity; and (3) that plaintiff's claim is at most a negligence claim and thus is not cognizable under § 1983.

This Court referred this action to the Honorable Theodore H. Katz, United States Magistrate Judge, for preparation of a report and recommendation on defendant's motion to dismiss. On September 17, 1996, Judge Katz issued a Report and Recommendation (the "Report") that this Court grant defendant's motion and dismiss the complaint with prejudice. Pursuant to 28 U.S.C. § 636(b)(1) and Rules 72(b), 6(a) and 6(e) of the Federal Rules of Civil Procedure, the parties have ten (10) days to file written objections to a report and recommendation after being served with a copy. Plaintiff requested, and was granted, an extension of time to file objections. By an Order of this Court dated October 1, 1996, plaintiff was directed to file objections by November 4, 1996. Plaintiff

has failed to file objections within the specified time or to request a further extension. Furthermore, the Court has reviewed the Report and finds that it is legally correct and proper. The Court therefore adopts the Report in its entirety.

Accordingly, for the reasons stated by Judge Katz in the Report, defendant's motion to dismiss the § 1983 claim is HEREBY GRANTED; the complaint is dismissed with prejudice, and therefore leave to amend the complaint is HEREBY DENIED.

**SO ORDERED.**

## REPORT AND RECOMMENDATION

This prisoner *pro se* action was referred to me by your Order of Reference, pursuant to 28 U.S.C. § 636(b)(1)(B) and (C), for a Report and Recommendation with respect to defendant's motion to dismiss the Complaint for failure to state a claim for relief. For the following reasons, I recommend that defendant's motion be granted and that the action be dismissed with prejudice.

### BACKGROUND

Plaintiff, who had been a pre-trial detainee on Rikers Island ("Rikers"), was sentenced on criminal charges on December 20, 1994 and subsequently incarcerated for two days at the Beacon Correctional Facility on Rikers. (Complaint, dated March 31, 1995 ("Compl."), § IV.) On December 22, 1994, he was transferred to another Rikers facility, A.R.D.C. (*Id.*)

Plaintiff alleges that on January 11, 1995 an attempt was made to transfer him to Downstate Correctional Facility ("Downstate"), a prison operated by New York State, but that Downstate refused to accept him because of a "technicality": his fingerprints had not been taken at A.R.D.C. (*Id.*) As a result, plaintiff was returned to A.R.D.C. and was scheduled to have his fingerprints taken the next day. (*Id.*) According to plaintiff, he was not transferred back to Downstate until twenty days later, on January 31, 1995.

Plaintiff claims that New York City is required to transfer "state-ready" inmates to state facilities within ten to fourteen days of

sentencing. (Compl. § IV–A). He further claims that the delay in his transfer caused by A.R.D.C. was unnecessary and in violation of this requirement, and that he is entitled to monetary damages to compensate him for the "stress and humiliation" he suffered as a result of the delay. (Compl. §§ IV–A—V.)

Brian Conroy, the sole defendant in this action, was the Warden of A.R.D.C. at the time plaintiff was incarcerated there. (Compl. § IV). He now moves pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss the Complaint, alleging that it fails to state a claim upon which relief can be granted. Defendant argues that the Complaint is deficient because (a) plaintiff has no constitutionally protected liberty interest in being transferred from the City prison system into the State prison system within a particular period of time; (b) plaintiff has failed to state a claim against the Warden, sued in his official capacity, under *Monell v. Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); and (c) plaintiff has pleaded, at most, a negligence claim, which does not state a cause of action under 42 U.S.C. § 1983. (Defendant's Memorandum of Law, dated May 21, 1996 ("Def.Mem."), at 1–2.) Plaintiff did not file a response to defendant's motion to dismiss.

### DISCUSSION

#### I. *Dismissal under Rule 12(b)(6)*

On a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the court must accept all allegations of the complaint as true, draw all reasonable inferences in plaintiff's favor and may dismiss only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); *Walker v. City of New York,* 974 F.2d 293, 298 (2d Cir.1992), *cert. denied,* 507 U.S. 961, 113 S.Ct. 1387, 122 L.Ed.2d 762 (1993); *Fields v. Soloff,* 920 F.2d 1114, 1118–19 (2d Cir.1990); *Washington v. James,* 782 F.2d 1134, 1138 (2d Cir.1986). All pleadings should be construed so as to do substantial justice. Fed.R.Civ.P. 8(f). In deciding motions to dismiss brought pursu-

ant to Rule 12(b)(6), the court "is not to weigh the evidence that might be presented at trial but merely to determine whether the complaint itself is legally sufficient." *Festa v. Local 3 Int'l Bhd. of Elec. Workers*, 905 F.2d 35, 37 (2d Cir.1990).

The Federal Rules of Civil Procedure do not require a claimant to set out in detail the facts upon which a claim is based. All that is required is a "short and plain statement of the claim" giving the defendant notice of the nature of the claim and the grounds upon which it rests. *See Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 168, 113 S.Ct. 1160, 1163, 122 L.Ed.2d 517 (1993); *Conley*, 355 U.S. at 47, 78 S.Ct. at 103; Fed.R.Civ.P. 8(a)(2). Moreover, *pro se* complaints, such as the instant one, should be liberally construed by the court. *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S.Ct. 285, 292, 50 L.Ed.2d 251 (1976). They are to be afforded a close and sympathetic reading and are not to be held to as rigorous a standard as formal pleadings prepared by an attorney. *Haines v. Kerner*, 404 U.S. 519, 520–21, 92 S.Ct. 594, 595–96, 30 L.Ed.2d 652 (1972) (per curiam); *Washington*, 782 F.2d at 1138; *Salahuddin v. Coughlin*, 781 F.2d 24, 28–29 (2d Cir.1986). Having applied these standards in this case, I conclude that the Complaint in this action fails to state a cause of action upon which relief can be granted and therefore recommend that defendant's motion to dismiss be granted.

## II. *Constitutionally Protected Liberty Interest*

Plaintiff does not specify of which constitutional right he was allegedly deprived as a result of the delay in his transfer from the City prison system to the State prison system, but the Complaint can fairly be read as contending that plaintiff had a liberty interest under the Fourteenth Amendment in being transferred to state custody within a specified period of time and that this interest was infringed without due process of law by the twenty-day delay.[1] Courts routinely review prison transfer issues under a liberty interest analysis. *See, e.g. Olim v. Wakinekona*, 461 U.S. 238, 103 S.Ct. 1741, 75 L.Ed.2d 813 (1983) (inmate transferred interstate); *Meachum v. Fano*, 427 U.S. 215, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976) (inmate transferred intrastate).

To be successful in a § 1983 action alleging the denial of a liberty interest, plaintiff must show both that the purportedly adverse action that was taken implicates a liberty interest, *Meachum*, 427 U.S. at 223–24, 96 S.Ct. at 2538, and that the requisite process was not provided before plaintiff was deprived of that interest, *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 428, 102 S.Ct. 1148, 1153–54, 71 L.Ed.2d 265 (1982); *Green v. Bauvi*, 46 F.3d 189, 194 (2d Cir.1995). Because I find that the delay in plaintiff's transfer did not deny plaintiff any liberty interest, I need not determine whether the amount of process, if any, afforded to plaintiff was sufficient to satisfy the Fourteenth Amendment.

Prior to the Supreme Court's decision in *Sandin v. Conner*, —— U.S. ——, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), whether a prison regulation or a statutory provision relating to the administration of the prison system gave rise to a liberty interest was as-

---

1. Although plaintiff has not even remotely pleaded what process he was denied, the Court nevertheless treats his Complaint as alleging a procedural due process claim rather than a substantive due process claim. The alleged right to be transferred within ten to fourteen days cannot be construed as among those few substantive rights that the Supreme Court has identified as "fundamental" and that therefore cannot be abridged regardless of the procedure used. *See, e.g., Planned Parenthood v. Casey*, 505 U.S. 833, 846–49, 112 S.Ct. 2791, 2804–06, 120 L.Ed.2d 674 (1992); *Rochin v. California*, 342 U.S. 165, 172–73, 72 S.Ct. 205, 209–10, 96 L.Ed. 183 (1952). Indeed, the Supreme Court has been "reluctant to expand the concept of substantive due pro-

cess" and has accordingly limited its protections for the most part to "matters relating to marriage, family, procreation and the right to bodily integrity." *Albright v. Oliver*, 510 U.S. 266, 271, 114 S.Ct. 807, 812, 127 L.Ed.2d 114 (1994). Whether or not plaintiff's transfer implicates procedural due process, "his claim hardly implicates the concerns that have prompted the Supreme Court to declare certain rights fundamental." *Beo v. District of Columbia*, 44 F.3d 1026, 1028 (D.C.Cir.1995) (breach of settlement agreement which guaranteed prisoner would be transferred to a particular prison and would not thereafter be transferred into any other prison did not implicate substantive due process).

certained by examining the language of the particular regulation or statute to determine whether it was mandatory in nature. *Hewitt v. Helms,* 459 U.S. 460, 472, 103 S.Ct. 864, 871, 74 L.Ed.2d 675 (1983). If, in addition to being mandatory, the language placed "substantive limitations on official discretion" in carrying out the goals of the regulation or statute, *Kentucky Dep't of Corrections v. Thompson,* 490 U.S. 454, 462, 109 S.Ct. 1904, 1909, 104 L.Ed.2d 506 (1989) (quoting *Olim,* 461 U.S. at 249, 103 S.Ct. at 1747), the combination would result in "a conclusion that the state has created a [protected] liberty interest" under the regulation or statute, *Id.,* 490 U.S. at 463, 109 S.Ct. at 1910 (citing *Hewitt,* 459 U.S. at 472, 103 S.Ct. at 871).

■ Although the Court in *Sandin* reiterated that "[s]tates may under certain circumstances create liberty interests which are protected by the Due Process Clause," it emphasized that

these interests will generally be limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.

*Sandin,* —— U.S. at ——, 115 S.Ct. at 2300 (citations omitted). Thus, after *Sandin,* plaintiff must establish both that defendant's failure to transfer him into the State prison system within ten to fourteen days "create[d] an 'atypical and significant hardship'" on him and that the state "has granted its inmates, by regulation or by statute, a protected liberty interest" in being transferred within this time frame. *Frazier v. Coughlin,* 81 F.3d 313, 317 (2d Cir.1996); *accord Rimmer–Bey v. Brown,* 62 F.3d 789, 790 (6th Cir.1995) (quoting *Sandin,* —— U.S. at ——, 115 S.Ct. at 2300); *Santana v. Keane,* No. 90 Civ. 6309 (AGS), 1996 WL 465751, at *3 (S.D.N.Y. Aug. 14, 1996) (citing *Frazier,* 81 F.3d at 317); *Duffy v. Slesky,* No. 95 Civ. 0474 (LBS), 1996 WL 407225, at *5 (S.D.N.Y. July 18, 1996). Plaintiff's Complaint fails to set forth facts that would establish either of these requirements and so should be dismissed for failure to state a claim upon which relief can be granted.

### A. *State Law Source of Liberty Interest*

Plaintiff has failed to make reference to any specific source of a purported liberty interest in being transferred to state custody, only alluding to a delay exceeding "the 10 to 14 day requirement." (Compl. § IV.A.) Defendant presumes that plaintiff relies on a settlement agreement reached in the New York State court proceeding *Calvin v. Abate,* No. 44831/91 (N.Y. County, July 30, 1992) (attached to Def.Mem. as App. A) to support the ten to fourteen-day transfer requirement. (Def.Mem. at 5–6.) In that case, prisoners incarcerated by the New York City Department of Correction sued, *inter alia,* the New York City and State corrections departments, concerning time periods for the city-to-state transfer process. *Id.* at 5. The City Department of Correction filed a cross-claim against the State Department of Correction seeking relief with respect to the State's role in the process. The parties eventually settled, and among the provisions of the settlement agreement are requirements (1) that the City notify the State within five days that it has state-ready inmates available for transfer and (2) that the State generally accept such state-ready inmates within ten days of notification. (*Id.* at 5–6.)

■ There is reason to doubt that plaintiff relies on the settlement agreement as the source of his claim in this action since he nowhere mentions it in his Complaint. Moreover, the appropriate way to enforce a claim for breach of a settlement agreement is to move for contempt in state court, where the settlement agreement was entered. *See Batista v. Rodriguez,* 702 F.2d 393, 398 (2d Cir.1983) (remedy for breach of consent decree is "a suit for breach of contract or enforcement of the decree though judicial sanctions, including contempt, not an action under § 1983"); *accord Klein v. Zavaras,* 80 F.3d 432, 435 (10th Cir.1996); *Martel v. Fridovich,* 14 F.3d 1, 3 (1st Cir.1993); *DeGidio v. Pung,* 920 F.2d 525, 534 (8th Cir.1990); *Green v. McKaskle,* 788 F.2d 1116, 1122–24 (5th Cir.1986).

■ In any event, such reliance would be futile. Even assuming that the terms of a consent decree can give rise to a liberty interest, particularly since the *Sandin* decision, *see Rodi v. Ventetuolo*, 941 F.2d 22, 26–27 (1st Cir.1991) (regulations promulgated as result of consent decree may give rise to a liberty interest); *Kindred v. Duckworth*, 9 F.3d 638, 642 (7th Cir.1993) (consent decree proffering inmates with substantive rights gives rise to liberty interest), there is no basis to conclude that the state court settlement agreement in *Calvin* creates a Fourteenth Amendment liberty interest on inmates' behalf vis-à-vis the City. The agreement primarily establishes administrative procedures to be implemented between the City and State and nowhere establishes a mandatory obligation on the City's part to transfer inmates to State custody within a set period of time. *See Slezak v. Evatt*, 21 F.3d 590, 595 (4th Cir.1994) (no liberty interest created by consent decree that lacks "explicitly mandatory language" binding on officials in their decision making process), *cert. denied*, —— U.S. ——, 115 S.Ct. 235, 130 L.Ed.2d 158 (1994); *Smith v. Sumner*, 994 F.2d 1401, 1406 (9th Cir.1993) (no liberty interest created by consent decree which merely provides procedural safeguards); *DeGidio*, 920 F.2d at 534 (no liberty interest created by consent decree that does not place substantive restrictions on the exercise of official discretion); *Korkala v. New York City Dep't of Correction*, No. 84 Civ. 5740 (RLC), 1986 WL 9798, at 5 (S.D.N.Y. Sept. 4, 1986) (no liberty interest created by consent decree that merely delineates procedural guidelines but does not place substantive limits on official discretion). *Cf. Watson v. City of New York*, 92 F.3d 31, 37 (2d Cir.1996) (state rule of criminal procedure does not create a liberty interest entitled to protection under the federal Constitution).

■ We have considered an alternative source for plaintiff's claim—New York Criminal Procedure Law § 430.20. Under that provision, once a defendant has been sentenced to serve a term in state prison, he or she must be transferred into the state prison system "forthwith" to begin serving that sentence. N.Y.Crim.Proc.Law § 430.20(1) (McKinney 1994). Despite the fact that section 430.20(1) does not specify a time limit by which transfer must be completed, under certain circumstances some courts have construed that limit to be ten to fourteen days. *See County of Nassau v. Cuomo*, 69 N.Y.2d 737, 504 N.E.2d 689, 512 N.Y.S.2d 362 (1987); *Crespo v. Hall*, 56 N.Y.2d 856, 438 N.E.2d 1107, 453 N.Y.S.2d 392 (1982). Neither of these cases, however, supports the proposition that the term "forthwith" as used in section 430.20(1) creates a mandatory obligation on the City to transfer all state-ready inmates to state facilities under all circumstances within ten to fourteen days. Consequently, these cases also do not support the related proposition that the statute creates a liberty interest in such transfers.[2]

In *Cuomo*, the New York Court of Appeals affirmed an order of the New York Supreme Court, in favor of Nassau County, directing the Department of Correctional Services to accept all state-ready prisoners within fourteen days of sentencing. Similarly, in *Crespo*, the court left undisturbed an order of the Appellate Division requiring the New York State Division of Youth to accept all state-ready juvenile prisoners within ten days of sentencing. Neither case involved a purported obligation on the part of the City to transfer prisoners into State custody within any specified period of time and neither involved individual actions against the City for money damages for its failure to do so. To the contrary, both cases involved the State's obligation under the statute to accept state-ready prisoners into its system within a reasonable period of time.

Moreover, in neither case did the court hold that the "forthwith" language of section 430.20(1) requires all transfers under the statute to take place within ten to fourteen days of sentencing. The court later made clear that in both *Cuomo* and *Crespo*, it had anticipated that the imposed time limits

---

**2.** Whether the statute creates a liberty interest in state-ready inmates being transferred into a state facility *at some point in time* is not at issue, since plaintiff does not complain that he was not transferred at all, but rather, that he was not transferred *within ten to fourteen days*.

would "yield in particular cases of demonstrated need," leaving open the "possibility for flexibility in particular cases of demonstrated need." *Ayers v. Coughlin*, 72 N.Y.2d 346, 352–53, 530 N.E.2d 373, 375, 533 N.Y.S.2d 849, 851 (1988). Finally, although the court in *Ayers* recognized that the statute is mandatory in terms of its requirement that sentenced prisoners be transferred to the custody of the State at some point in time, it also acknowledged that the statute did not impose a mandatory time period within which its goals must be accomplished:

> While the legislature made clear its intention that commitment to the custody of the appropriate public servant should take place without delay, its choice of "forthwith" rather than the specification of a hard-and-fast number of days left certain limited flexibility in implementing its mandate.

*Id.* at 353, 530 N.E.2d at 376, 533 N.Y.S.2d at 852.

These cases address institutional interests, i.e., those of the City and State correctional systems, as opposed to the purely individual interest at stake in this case. Although the Court of Appeals was unwilling to extend unlimited discretion to the State in deciding when it would accept prisoners into its system, recognizing the problems inherent in the processing of prisoners and the possibility of exigent circumstances in particular cases, it was likewise unwilling to impose an inflexible time period in each case. *Id.* at 354, 530 N.E.2d 373, 533 N.Y.S.2d at 849 ("The Legislature specified no hard-and-fast number of days in enacting CPL 430.20(1); nor do we in construing it.")

Thus, neither the statute itself, which by its language imposes no mandatory time limit, nor the cases construing the term "forthwith" as used in the statute, contain the type of mandatory language obligating the City to transfer state-ready prisoners within a speci-

fied period of time that would create a protected liberty interest under *Hewitt* supporting plaintiff's due process claim. Nor do the cases impose substantive limits on the discretion given to officials for completing transfers under the statute. Therefore, because no liberty interest in a ten to fourteen-day transfer has been conferred on plaintiff, dismissal under Rule 12(b)(6) is proper.[3] *See, e.g., Gill v. Mooney*, 824 F.2d 192, 194 (2d Cir.1987); *Butler v. New York State Correctional Dep't*, No. 94 Civ. 5054 (AGS), 1996 WL 438128, at *5 (S.D.N.Y. Aug. 2, 1996); *Jones v. Artuz*, No. 93 Civ. 8784 (MBM), 1994 WL 721362, at *2 (S.D.N.Y. Dec. 30, 1994); *Hernandez v. Coughlin*, No. 91 Civ. 4689 (SWK), 1992 WL 47366, at *3 (S.D.N.Y. Mar. 4, 1992), *aff'd*, 18 F.3d 133 (2d Cir.), *cert. denied*, —— U.S. ——, 115 S.Ct. 117, 130 L.Ed.2d 63 (1994); *Cruz v. Sielaff*, 767 F.Supp. 547, 550 (S.D.N.Y.1991).

## B. *Atypical and Significant Hardship*

The Complaint also fails to allege any facts that would support an inference that the delay in plaintiff's transfer to state custody created "an atypical and significant hardship," as required by *Sandin*. This failure is fatal to the contention that there was a liberty interest in such transfer.

Even assuming that the statute's obligations are sufficiently mandatory and nondiscretionary so as to create a liberty interest in being transferred within ten to fourteen days of sentencing, nothing in the Complaint even suggests either that the conditions or duration of plaintiff's confinement were significantly effected by the extra twenty days he spent in the City system, or that the length of time spent in the City system worked a "major disruption" in plaintiff's environment. *See Sandin*, —— U.S. at ——, 115 S.Ct. at 2301.

Quite simply, plaintiff has not set forth a single allegation from which any inference

---

**3.** This conclusion is supported by the Third Department's interpretation of the statute, which is silent as to whether a claimant such as plaintiff may be compensated for time spent in the City system because of an alleged violation of the statute by the City. The Third Department concluded that a violation of the statute does not give rise to a private right of action for money

damages. *See County of Monroe v. State*, 123 A.D.2d 141, 511 N.Y.S.2d 169 (3d Dep't), *appeal denied*, 69 N.Y.2d 612, 511 N.E.2d 86, 517 N.Y.S.2d 1027 (1987) (no private right of action for money damages to compensate county for costs arising from state's delay in accepting convicted, sentenced felons into the state prison system).

could be drawn that remaining in the City prison system for twenty days, as opposed to being in the State correctional system during that same period, presented a significant hardship to him. Plaintiff does not allege any qualitative differences at all between the two systems. The Complaint does not allege, nor can it reasonably be inferred, that the conditions of confinement to which plaintiff was subjected in the City system, as opposed to the State correctional system, were so onerous that they fell outside "the expected parameters of the sentence imposed by a court of law." *Sandin,* —— U.S. at ——, 115 S.Ct. at 2301. Indeed, it would belie logic to suggest that plaintiff's twenty-day additional stay in non-punitive status in City custody, where he had already been confined as a pretrial detainee, resulted in anything close to the hardship endured by prisoners in punitive segregation, which the *Sandin* Court found insufficient to give rise to a liberty interest. *Sandin,* —— U.S. at ——, 115 S.Ct. at 2301 (thirty days in disciplinary segregated confinement with resultant loss of certain privileges did not impose an atypical and significant hardship). *See also, e.g., Frazier,* 81 F.3d at 317–18 (twelve days in segregated housing unit with loss of recreational and vocational opportunities and virtually no contact with other prisoners, and eleven months in close supervision unit with resulting loss in eligibility for certain jobs and increased security measures did not impose an atypical and significant hardship); *Nogueras v. Coughlin,* No. 94 Civ. 4094 (JSM), 1996 WL 487951, at *5 (S.D.N.Y. Aug. 27, 1996) (two-hundred ten days in disciplinary confinement with loss of telephone, package and commissary privileges did not impose an atypical and significant hardship); *Webb v. Artuz,* No. 93 Civ. 5985 (DLC), 1996 WL 452260, at *4 (S.D.N.Y. Aug. 8, 1996) (forty-five days in segregated confinement with loss of telephone, package and commissary privileges did not impose an atypical and significant hardship); *Luis v. Coughlin,* No. 92 Civ. 219C, 1996 WL 468806, at *6 (W.D.N.Y. Aug. 5, 1996) (thirty-three days in segregated confinement with restricted visitation, telephone, shower, commissary and library privileges did not impose an atypical and significant hardship); *Uzzell v. Scully,* 893 F.Supp. 259,

263 (S.D.N.Y.1995) (twenty-three days of administrative segregation did not impose an atypical and significant hardship).

Finally, plaintiff does not contend that his confinement in the City prison system for twenty days longer than expected will subject him to a longer prison sentence than that imposed by the sentencing court. Indeed, the time plaintiff served on Rikers will be credited towards his state sentence. N.Y. Penal Law § 70.30(3) (McKinney Supp.1996). Thus, remaining in the City system had no meaningful effect on the duration of his sentence. *Sandin,* —— U.S. at ——, 115 S.Ct. at 2302; *Frazier,* 81 F.3d at 317–18; *Nogueras,* 1996 WL 487951, at *4; *Webb,* 1996 WL 452260, at *4; *Luis,* 1996 WL 468806, at *5, *Uzzell,* 893 F.Supp. at 263.

■ Because plaintiff has not alleged that the conditions of his confinement in the City prison system were significantly and atypically more onerous than the basic conditions of confinement in the State correctional system, under *Sandin* he has raised no cognizable liberty interest in being transferred to State custody in ten to fourteen days. *Frazier,* 81 F.3d at 317; *Lee v. Governor of New York,* 87 F.3d 55, 58 (2d Cir.1996); *Santana,* 1996 WL 465751, at *3–5; *Schmelzer v. Norfleet,* 903 F.Supp 632, 635 (S.D.N.Y.1995); *see also Olim,* 461 U.S. at 247–48, 103 S.Ct. at 1746–47 (transfer from Hawaii prison to California prison does not implicate a liberty interest because it is "within the normal limits or range of custody which the conviction has authorized the State to impose") (citation omitted); *Meachum,* 427 U.S. at 225, 96 S.Ct. at 2538 (transfer to prison where life "is much more disagreeable than in another" does not implicate a liberty interest so long as the confinement is "within the normal limits or range of custody which the conviction authorized the state to impose").

### III. *Personal Involvement of the Defendant*

■ The *pro se* Complaint names as the sole defendant, Warden Conroy. It fails to specify in what capacity he is being sued. Where doubt exists as to whether an official is sued in his individual or official capacity, generally the course of the proceedings will

resolve the ambiguity by revealing the nature of the liability sought to be imposed. *Kentucky v. Graham*, 473 U.S. 159, 167 n. 14, 105 S.Ct. 3099, 3106 n. 14, 87 L.Ed.2d 114 (1985) (citing *Brandon v. Holt*, 469 U.S. 464, 469, 105 S.Ct. 873, 877, 83 L.Ed.2d 878 (1985)); *Rodriguez v. Phillips*, 66 F.3d 470, 482 (2d Cir.1995); *Frank v. Relin*, 1 F.3d 1317, 1326 (2d Cir.), *cert. denied*, 510 U.S. 1012, 114 S.Ct. 604, 126 L.Ed.2d 569 (1993); *Shabazz v. Coughlin*, 852 F.2d 697, 700 (2d Cir.1988). Thus, where a plaintiff has not clearly identified in her Complaint the capacity in which the defendant is sued, the court should not automatically construe it as focusing on one capacity to the exclusion of the other. *Frank*, 1 F.3d at 1326.

To establish personal liability against a municipal official in a § 1983 action, plaintiff must merely "show that the official, acting under color of state law, caused the deprivation of a federal right." *Graham*, 473 U.S. at 166, 105 S.Ct. at 3105. However, more is required in an official-capacity action, where the suit is, in effect, against the governmental entity. In order to show liability on the part of a governmental entity, the plaintiff must establish that "the entity itself is the moving force behind the deprivation ... [and that] the entity's policy or custom ... played a part in the violation of federal law." *Id.* (citations and internal quotations omitted); *Goldberg v. Town of Rocky Hill*, 973 F.2d 70 (2d Cir.1992).

Defendant assumes that he is being sued in his capacity as a municipal official rather than in his individual capacity. (Def.Mem. at 8.) Accordingly, he claims that the Complaint is fatally defective because it fails to allege an official policy or practice that resulted in the delayed transfer, as required by *Monell*, 436 at 690–91, 98 S.Ct. at 2035–36 and *Graham*, 473 U.S. at 165–66, 105 S.Ct. at 3105. The Court agrees that plaintiff implicates no official policy in the alleged deprivation of his constitutional rights.

■ Plaintiff does not claim that the City's policy is to delay transfers of state-ready prisoners out of the City system. Quite the contrary, the Complaint can only fairly be read as alleging that the constitutional deprivation resulted from a failure to follow the City's transfer policy. Thus, the Complaint cannot make out a claim against defendant Conroy in his official capacity. *See Oliveri v. Thompson*, 803 F.2d 1265, 1278–79 (2d Cir.1986) (where complaint does not indicate involvement of individual it is an official capacity suit requiring proof that the implementation of a municipal policy infringed on plaintiff's constitutional rights), *cert. denied*, 480 U.S. 918, 107 S.Ct. 1373, 94 L.Ed.2d 689 (1987).

■ If, on the other hand, defendant is sued in his individual capacity, the Complaint is equally defective. Section 1983 imposes liability only upon a defendant who personally "subjects, or causes to be subjected" any person to the deprivation of a federal right. 42 U.S.C. § 1983. Accordingly, "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Williams v. Smith*, 781 F.2d 319, 323 (2d Cir.1986) (quoting *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir.1977), *cert. denied*, 434 U.S. 1087, 98 S.Ct. 1282, 55 L.Ed.2d 792 (1978)).

■ The "personal involvement" requirement is satisfied where a plaintiff demonstrates that a defendant directly participated in the acts alleged to constitute a violation of plaintiff's rights. If the defendant was acting only in a supervisory capacity, personal involvement may be shown by alleging that the defendant (1) after learning of a continuing egregious wrong, failed to redress that wrong; (2) created a policy or custom pursuant to which the unconstitutional practices occurred or allowed such a policy or custom to continue; or (3) exhibited deliberate indifference or gross negligence in managing the subordinates who caused the unconstitutional condition or event. *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir.1994); *Williams*, 781 F.2d at 323–24. Liability will not be imputed to an official merely on the basis of respondeat superior. *Johnson v. Glick*, 481 F.2d 1028, 1034 (2d Cir.), *cert. denied*, 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973); *see Monell*, 436 U.S. at 663, 98 S.Ct. at 2022. Accordingly, an allegation that defendant is in a high position of authority, such as the warden of a prison, is,

in and of itself, insufficient to impose liability absent proof of personal involvement in the constitutional deprivation. *McKinnon,* 568 F.2d at 934; *Brito v. Coughlin,* No. 88 Civ. 8064 (PKL), 1989 WL 241718, at *1 (S.D.N.Y. July 31, 1989).

A complaint predicated on a violation of § 1983 that fails to allege personal involvement of the defendant is "fatally defective on its face." *Alfaro Motors, Inc. v. Ward,* 814 F.2d 883, 886 (2d Cir.1987); *accord Black v. United States,* 534 F.2d 524, 527–28 (2d Cir. 1976). Therefore, where a complaint is silent as to a defendant's personal involvement, dismissal of the § 1983 claim as to that defendant is proper. *See e.g., Gill,* 824 F.2d at 196; *Cruz,* 767 F.Supp. at 550–51; *Johnson v. Commissioner of Correctional Servs.,* 699 F.Supp. 1071, 1075 (S.D.N.Y.1988).

 In the present action, the Complaint is devoid of any suggestion that Warden Conroy was personally involved in depriving plaintiff of any constitutional right. Plaintiff alleges none of the four scenarios set forth in *Williams.* He does not claim that the defendant directly participated in the alleged constitutional deprivation. Nor does plaintiff assert that a policy or custom existed with respect to delays in transferring prisoners between A.R.D.C. and the State prison system.[4] He does not claim that defendant was grossly negligent in managing those who actually caused the delay. Finally, there is no allegation that defendant became aware of the delay and failed to remedy it. None of the allegations in the Complaint remotely link defendant Conroy to the alleged conduct at issue in any direct manner. In short, even the most liberal reading of the Complaint reveals no alleged act or knowledge on the part of defendant that would give rise to liability under § 1983. Consequently, the Complaint fails to state a cause of action under § 1983 and should be dismissed.

### IV. *Requirement of Intent*

Assuming *arguendo* that plaintiff's Complaint pleaded the requisite personal involvement on the part of the defendant, his Complaint is nevertheless deficient because it alleges at most only negligent conduct. It is well-settled that allegations of negligence resulting in a constitutional deprivation are insufficient to state a claim under § 1983. *Daniels v. Williams,* 474 U.S. 327, 329, 106 S.Ct. 662, 663, 88 L.Ed.2d 662 (1986) ("[T]he Due Process Clause is simply not implicated by a *negligent* act of an official causing unintended loss of or injury to life, liberty, or property."); *accord, Davidson v. Cannon,* 474 U.S. 344, 347–48, 106 S.Ct. 668, 670, 88 L.Ed.2d 677 (1986); *Bryant v. Maffucci,* 923 F.2d 979, 983–84 (2d Cir.), *cert. denied,* 502 U.S. 849, 112 S.Ct. 152, 116 L.Ed.2d 117 (1991). At a minimum, courts construing *Daniels* demand an allegation of gross negligence to satisfy the state of mind requirement of § 1983. *See, e.g., Butler,* 1996 WL 438128, at *3 (*pro se* plaintiff satisfies *Williams* by pleading gross negligence on the part of prison official that led directly to the constitutional violation).

Plaintiff appears to allege that prison officials at A.R.D.C. were obligated to fingerprint him and that his initial transfer to Downstate was rejected because of their failure to do so. (Compl. § IV.) He does not suggest that anyone involved knowingly instituted his transfer to Downstate without taking his fingerprints with the intent to have Downstate reject the transfer and return him to Rikers. Indeed, such an allegation would be extremely difficult to credit in light of the fact that the City has an institutional interest in moving inmates from the City system into the State system and, it would appear, has little motivation to delay such transfers. *Cf. Ayers,* 72 N.Y.2d 346, 530 N.E.2d 373, 533 N.Y.S.2d 849 (lawsuit by county sheriffs against various state agencies to compel State to accept state-ready inmates from county facilities); *Cuomo,* 69 N.Y.2d 737, 504 N.E.2d 689, 512 N.Y.S.2d 362 (lawsuit by County of Nassau against New York State to compel State to accept state-ready inmates from county); *County of Monroe,* 123 A.D.2d 141, 511 N.Y.S.2d 169 (lawsuit by County

---

4. Indeed, plaintiff's argument is that his treatment was a departure from policy, since he claims he should have been transferred within ten to fourteen days of sentencing. Thus, the alleged constitutional deprivation in this case is not the result of a purported transfer policy, but rather the result of a failure to implement that policy.

seeking money damages from State for costs incurred in housing state-ready inmates).

■ Plaintiff's allegation of a single, isolated instance of negligence is insufficient as a matter of law to state a claim under § 1983. *See, e.g., Dresdner v. Brockenton,* No. 93 Civ. 8814 (DLC), 1996 WL 452275, at *3 (S.D.N.Y. Aug. 8, 1996). Because "[e]ven drawing all inferences favorable to [plaintiff], he has not demonstrated any basis upon which [to] infer that [defendant's] involvement in any aspect of the incident was anything more than mere negligence," the Complaint does not state a cause of action for deprivation of plaintiff's constitutional rights under § 1983 and should therefore be dismissed. *Id.* at *3; *see also Gill,* 824 F.2d at 195 (affirming dismissal of § 1983 claim for failure to state a cause of action where conduct alleged "amounted to nothing more than a mere negligent act"); *Ragland v. Abate,* No. 94 Civ. 5650 (JFK), 1996 WL 94565, at *2 (S.D.N.Y. Mar. 5, 1996) (dismissing § 1983 claim for failure to state a cause of action where allegations sounded in negligence).

## V. *Dismissal with Prejudice*

■ Although it is apparent that plaintiff's Complaint should be dismissed, the question remains whether dismissal should be with or without prejudice. In general, where a complaint is dismissed for legal insufficiency, plaintiff should be offered at least one opportunity to replead in order to correct the defects in the original complaint. *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962); *Cortec Indus., Inc. v. Sum Holding L.P.,* 949 F.2d 42, 48 (2d Cir.1991), *cert. denied,* 503 U.S. 960, 112 S.Ct. 1561, 118 L.Ed.2d 208 (1992), *Ronzani v. Sanofi S.A.,* 899 F.2d 195, 198 (2d Cir.1990). The district court's refusal to permit plaintiff to amend "must be based on valid grounds." *Kaster v. Modification Sys., Inc.,* 731 F.2d 1014, 1018 (2d Cir.1984). The court, therefore, should not refuse to grant leave to amend without articulating a justifying reason. *Foman,* 371 U.S. at 182, 83 S.Ct. at 230; *Ronzani,* 899 F.2d at 198; *Day v. Morgenthau,* 909 F.2d 75, 79 (2d Cir.1990), *cert. denied,* 506 U.S. 821, 113 S.Ct. 71, 121 L.Ed.2d 37 (1992).

■ The district court, however, is vested with discretion to deny leave to amend and to dismiss with prejudice, *Hernandez v. Coughlin,* 18 F.3d 133, 138 (2d Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 117, 130 L.Ed.2d 63 (1994); *McLaughlin v. Anderson,* 962 F.2d 187, 195 (2d Cir.1992), and is not required to grant leave to amend where an amendment would be futile because it could not cure the deficiencies in the original complaint. *Foman,* 371 U.S. at 182, 83 S.Ct. at 230; *In re Leslie Fay Cos. Secs. Litig.,* 918 F.Supp. 749, 771 (S.D.N.Y.1996); *see also Ruffolo v. Oppenheimer & Co.,* 987 F.2d 129, 130 (2d Cir.1993) (affirming district court's denial of leave to amend where proposed amendments failed to state a claim). Thus, a court should exercise its discretion to dismiss with prejudice "where a plaintiff is unable to allege any fact sufficient to support his claim." *Cortec,* 949 F.2d at 48–49 (dismissal with prejudice appropriate where, as a matter of law, undisputed facts revealed no liability for violation of Securities Act).

■ In this case, plaintiff has not even opposed defendant's motion to dismiss. As discussed in detail above, plaintiff's Complaint is devoid of any allegations that could even suggest that he had a protected liberty interest in being transferred into the state correctional system within ten to fourteen days of incarceration. He points to no policy of the City or State that could give rise to such a liberty interest. Moreover, the allegations, even liberally construed, do not allow an inference that remaining in the City system for twenty days constituted an atypical and significant hardship to plaintiff. Finally, the Complaint alleges nothing more than negligence and fails to allege any personal involvement in the conduct challenged by the sole defendant. Thus, even if plaintiff had opposed the motion and sought to amend the Complaint, it is apparent that any amendment would be futile. I therefore recommend that the Complaint be dismissed with prejudice. *See Spain v. Ball,* 928 F.2d 61, 62–63 (2d Cir.1991) (dismissal with prejudice appropriate where, as a matter of law, plaintiff could not possibly allege facts sufficient to support Title VII or ADEA claims); *Day,* 909 F.2d at 79 (dismissal with prejudice of

§ 1983 claim for malicious prosecution appropriate where plaintiff could not allege any facts that would state a claim); *Greenwaldt v. Coughlin,* No. 93 Civ. 6551 (LAP), 1995 WL 232736, at *5–6 (S.D.N.Y. Apr. 19, 1995) (dismissal without leave to replead of *pro se* prisoner's conspiracy claim appropriate since prisoner could not possibly cure his pleading defect since he had no legally protected interest at stake).

## CONCLUSION

For the foregoing reasons, I respectfully recommend that defendant's motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure be granted. Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72 of the Federal Rules of Civil Procedure, the parties shall have ten days from service of this Report to file written objections. *See also* Rules 6(a) and 6(e) of the Federal Rules of Civil Procedure. Such objections shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of the Honorable Peter K. Leisure, United States District Judge, and to the Chambers of the undersigned, Room 1660. Any requests for an extension of time for filing objections must be directed to Judge Leisure. Failure to file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Frank v. Johnson,* 968 F.2d 298, 300 (2d Cir.), *cert. denied,* 506 U.S. 1038, 113 S.Ct. 825, 121 L.Ed.2d 696 (1992); *Small v. Secretary of Health and Human Servs.,* 892 F.2d 15, 16 (2d Cir.1989).

Sept. 17, 1996.