**HARRISCOM SVENSKA, AB,**
**Plaintiff–Appellant,**

v.

**HARRIS CORPORATION and R.F. Systems, A Division of R.F. Communications Group of Harris Corporation, Defendants–Appellees.**

Nos. 1443, 1444, Dockets 93–7043, 93–7057.

United States Court of Appeals,
Second Circuit.

Argued May 20, 1993.

Decided Aug. 23, 1993.

Mark D. Shuman, Boston, MA, for plaintiff-appellant.

Richard A. Feinstein, Washington, DC (Alison L. Doyle, Lori L. Jackson, Jonathan L. Diesenhaus, McKenna & Cuneo, of counsel), for defendants-appellees.

Before: LUMBARD, CARDAMONE, and McLAUGHLIN, Circuit Judges.

CARDAMONE, Circuit Judge:

Before us on this appeal are two companies that contracted with one another for the sale of radios and spare parts. One is the radios' domestic manufacturer, the other is a Swedish organization, the manufacturer's distributor to the Islamic Republic of Iran. Having some doubt as to the continued viability of such trade, a *force majeure* clause, which is the subject of this litigation, was inserted into the parties' written agreement. What began as a doubt ripened into a certainty when the United States government prohibited all sales to Iran of goods it categorized as military equipment. A shipment of the contracted-for radio spare parts enroute to Sweden, but destined for Iran, was later detained by U.S. Customs.

One of the issues before us is whether the manufacturer's refusal to ship the spare parts was a voluntary act on its part, subjecting it to liability to its distributor for damages for breach of contract. We think it a foregone conclusion that a government bureaucracy determined to prevent what it considers military goods from leaving this country and with the will to compel compliance with its directives is an irresistible force, one that cannot reasonably be controlled. The government in these circumstances may be likened to the wife of "Rumpole of the Bailey," John Mortimer's fictional barrister, who describes his wife as "she who must be obeyed."

Harriscom Svenska, AB (Harriscom) appeals from two December 18, 1992 judgments

of the United States District Court for the Western District of New York (Telesca, C.J.) granting defendant Harris Corp.'s (RF Systems) motion for summary judgment and dismissing Harriscom's second complaint against Harris Corp. on *res judicata* grounds.

## FACTS

This appeal concerns two related contractual disputes between appellee Harris Corp. and its Sweden-based dealer, appellant Harriscom. RF Systems, a division of Harris Corp., manufactures radio communications products in Rochester, New York. It appointed Harriscom in 1983 as its exclusive distributor of RF Systems' products in Iran.

On December 6, 1985 U.S. Customs Service officials detained a shipment of RF Systems' model 2301 radio spare parts ordered by Harriscom and bound for Iran. The shipment was worth $663,869. According to a 1982 determination by the United States Department of Commerce, the model 2301 radio could be exported under a general license to almost any country. But upon detaining the model 2301 radio in December 1985, the government decided to reevaluate it. State Department officials began a commodity jurisdiction proceeding, authorized by the Arms Export Control Act, 22 U.S.C. §§ 2751–2796d (1988 & Supp. III 1991), to decide whether this particular radio was a military product that should be on the "Munitions List" and subject to more stringent export controls. For more than six months, RF Systems managers negotiated with officials from the Departments of Commerce, State and Defense in an effort to speed up these administrative proceedings. The extensive negotiations, RF Systems tells us, revealed that the government, particularly the Defense Department, was not concerned so much with the model 2301 radio itself as with its export to Iran. RF Systems eventually negotiated a compromise in late July 1986 under which it agreed to "voluntarily withdraw from all further sales to the Iranian market." The company asserted that by so doing it would lose $5.9 million in already contracted-for orders and

$10 million in potential orders to Iran. In exchange, the government ruled in September 1986 that the model 2301 radio was not subject to the stringent export controls of Munitions List products.

The State Department proceedings and resulting compromise that RF Systems and the government reached directly impacted on Harriscom's business. First, while negotiations were ongoing RF Systems could not fill any Harriscom orders to Iran. Second, the government, as a result of the compromise, allowed RF Systems to fill only three of eight outstanding Harriscom orders to Iran. These orders involved the disputed model 2301 radio and the model 301 radio. Harriscom's third alleged injury concerned performance bonds. In July 1986 RF Systems had performance bond guarantees of $240,000 in favor of Harriscom, but these bonds expired with shipment of the three outstanding orders. At the same time Harriscom itself had $550,000 of unconditional bond guarantees in favor of its customer, the Iranian government, and it lost $270,000 of these bonds as a result of RF Systems' failure to fill the five pending orders. Fourth, Harriscom sustained lost profits on those unfilled contracts.

The first of the two contractual disputes stems from the government's permitting RF Systems to fill only three of the eight outstanding Harriscom orders. Harriscom alleges RF Systems breached the contract between them with respect to the five remaining unfilled orders and also breached its dealership agreement because RF Systems did not apply for an export permit provided for in a November 1987 Commerce Department regulation, 15 C.F.R. § 785.4(d)(1)(xiii). Harriscom also claims breach based on RF Systems' failure to use its Indian licensee, Punjab Wireless Systems Ltd., to supply radios to Iran. Harriscom finally alleges RF Systems made its decision not to fill the five outstanding orders voluntarily.

The second contractual dispute involves a 1984 agreement between the parties under which Harriscom promised to purchase RF Systems' entire inventory of model 301 radios and spare parts for $3 million for resale in Iran. RF Systems warranted, in exchange, that it would not manufacture any more mod-

el 301 radios. This contract is contained in a September 12, 1984 Memorandum of Understanding and an October 12, 1984 side letter. Although the contract called for two shipments of the model 301 radios in December 1984 and April 1985 and payments for the same, the parties agreed in writing that the second date was "somewhat flexible." Harriscom had some difficulty in meeting these contract deadlines, but did place its order.

Then the State Department controversy over the model 2301 radio intervened, suspending all of RF Systems' Iranian business. In June 1986 RF Systems shipped one order of the model 301 radios to Harriscom, as part of its compromise with the government. Harriscom disputes several aspects of the model 301 radio contract, contending that subsequent negotiations changed its terms. Primarily, Harriscom challenges RF Systems' retention of a $150,000 deposit it paid in September 1984 and characterized by the agreement as "non-refundable."

## PROCEDURAL BACKGROUND

Appellant commenced the present suit against RF Systems on June 27, 1988 and filed an amended complaint on September 21, 1988. Three months later Harriscom's actions sounding in negligence and fraud were dismissed, leaving only contract claims to be litigated. In December 1990 the district court granted RF Systems' motion for summary judgment and dismissed the remainder of appellant's complaint. But several months later in a decision dated February 21, 1991 the trial court amended its judgment to revive Count X of the complaint, one that sought return of Harriscom's $150,000 deposit on the model 301 radio contract. The district court also reserved for trial RF Systems' counterclaim that alleged a breach of the model 301 radio contract by Harriscom because the dealer did not purchase the entire radio inventory. At the same time, it granted Fed.R.Civ.P. 54(b) certification.

Both parties appealed. We dismissed for lack of appellate jurisdiction over the certified claims because the related Count X claim and counterclaim remained for trial. See Harriscom Svenska AB v. Harris Corp., 947 F.2d 627, 630–31 (2d Cir.1991). Harris-

com thereupon filed a second complaint against RF Systems on November 26, 1991 alleging that RF Systems agreed to resume its Iranian business with Harriscom when conditions permitted, but had failed to make application under the November 1987 Commerce Department regulation.

On May 13, 1992 the district court granted RF Systems' motion for summary judgment on Count X of the first action. The district court also denied as moot Harriscom's motion in limine to introduce certain evidence at the Count X trial. Harriscom had sought to introduce evidence concerning RF Systems' failure to apply under the November 1987 Commerce Department regulation to export its products to Iran. On June 19, 1992 the district court stayed appellant's second complaint on res judicata grounds because it was litigated in the parties' original lawsuit. On December 17, 1992 it granted RF Systems' motion to dismiss voluntarily its counterclaim against Harriscom without prejudice. All issues having been resolved against Harriscom, a final judgment in both actions was entered on December 18, 1992. This appeal followed.

## DISCUSSION

Harriscom contends on appeal that the district court's grant of summary judgment was in error because the following issues of material fact exist: (1) whether RF Systems' decision not to fill the model 2301 radio contract orders was voluntary; (2) whether RF Systems acted in bad faith by not using its Indian licensee to supply radios to Iran; (3) whether RF Systems acted in bad faith by not applying for an export permit provided for in the November 1987 Commerce Department regulation; and (4) whether the parties intended that a $150,000 deposit required by their contract for model 301 radios be non-refundable. Harriscom also argues that the district court erred (5) in denying its motion to strike certain of appellee's affidavits and documents, (6) in denying its motion in limine and (7) in dismissing its second complaint against RF Systems on res judicata grounds.

■ When reviewing an appeal from a grant of summary judgment we conduct a *de novo* review of the record to determine whether there may be found a genuine issue of material fact requiring a trial. *See Bryant v. Maffucci,* 923 F.2d 979, 982 (2d Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 152, 116 L.Ed.2d 117 (1991). We examine this record with that objective in mind and consider in order appellant's seven assignments of error.

■ Harriscom's first contention is that RF Systems acted voluntarily when it and the United States government reached a compromise in which RF Systems agreed not to sell its products in Iran. As support, Harriscom points to the language of RF Systems' July 24, 1986 letter to the State Department. What appellant ignores is the overwhelming and uncontradicted evidence that the government would not allow RF Systems to continue sales to Iran. RF Systems established the affirmative defense of commercial impracticability because it complied in good faith with the government's informal requirements. *See* N.Y.U.C.C. § 2–615 & cmt. 10 (McKinney 1964). We reject appellant's assertion that good faith automatically presents an issue of fact precluding summary judgment because the record contains no evidence that RF Systems acted in bad faith. *See Leberman v. John Blair & Co.,* 880 F.2d 1555, 1560 (2d Cir.1989). Harriscom must demonstrate more than "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1986), in order to avoid dismissal. Further, for RF Systems to have failed to comply would have been unusually foolhardy and recalcitrant, for the government had undoubted power to compel compliance. *See Eastern Air Lines, Inc. v. McDonnell Douglas Corp.,* 532 F.2d 957, 994–96 (5th Cir.1976). Like commercial impracticability, a *force majeure* clause in a contract excuses nonperformance when circumstances beyond the control of the parties prevent performance. The contracts between these parties specifically contained *force majeure* clauses to excuse RF Systems' performance under the present circumstances, namely, "governmental interference." *Cf. Kel Kim Corp. v. Central Mkts.,* *Inc.,* 70 N.Y.2d 900, 902–03, 524 N.Y.S.2d 384, 519 N.E.2d 295 (1987) (*force majeure* clause did not specifically cover the claimed inability to perform). For substantially the same reasons, we see little merit to Harriscom's second contention that the contracts' covenant of good faith required RF Systems to provide substitute performance from its Indian licensee, Punjab Wireless Systems, Ltd.

■ Harriscom's third assertion that RF Systems should have applied in November 1987 for permission to export its products to Iran also is unpersuasive. The relevant Commerce Department regulation, 15 C.F.R. § 785.4(d)(1)(xiii), allows fulfillment of existing contracts in effect before October 22, 1987. Because RF Systems' performance was excused in July 1986, no contract in effect before October 22, 1987 still existed in November 1987. Harriscom failed to produce any evidence of an existing contract other than the assertions of its principal, which are inadequate to raise an issue of fact. *See W.W.W. Assocs. v. Giancontieri,* 77 N.Y.2d 157, 164, 565 N.Y.S.2d 440, 566 N.E.2d 639 (1990). In addition, RF Systems' July 1986 letter outlining the compromise terms clearly considers the unfilled Harriscom orders to be cancelled and a "loss." *See Goddard v. Ishikawajima–Harima Heavy Indus. Co.,* 29 A.D.2d 754, 287 N.Y.S.2d 901 (1st Dep't 1968), *aff'd,* 24 N.Y.2d 842, 300 N.Y.S.2d 851, 248 N.E.2d 600 (1969).

■ Harriscom's fourth contention that the $150,000 deposit was refundable despite clear contract language to the contrary is not sound. The contract terms requiring the deposit as the non-refundable first installment of the $3 million purchase price for the entire inventory of model 301 radios are unambiguous, so no issue of fact remains to be proven by extrinsic evidence. *See Seiden Assocs. v. ANC Holdings, Inc.,* 959 F.2d 425, 428 (2d Cir.1992); *Chimart Assocs. v. Paul,* 66 N.Y.2d 570, 572–73, 498 N.Y.S.2d 344, 489 N.E.2d 231 (1986). Harriscom's bald assertion that a non-refundable deposit is a patently unreasonable term in a contract does not create an issue of fact. *Cf. Thompson v. Gjivoje,* 896 F.2d 716, 721 (2d Cir.1990)

(mere assertion of ambiguity does not create issue of fact).

■ Harriscom avers, fifth, that the district court erred in denying its motion to strike certain RF Systems affidavits and documents offered in support of its summary judgment motion. The challenged affidavits, despite Harriscom's assertions to the contrary, are in fact based on personal knowledge and perceptions and therefore properly were considered. *See* Fed.R.Civ.P. 56(e). The documents were admissible business records. Because we affirm the district court's grant of summary judgment, Harriscom's motion *in limine* to introduce certain evidence at trial, its sixth assignment of error, correctly was denied as moot.

■ Finally, Harriscom insists the district court incorrectly dismissed its second complaint against RF Systems on *res judicata* grounds. Harriscom's argument that the district court did not consider the renewed claims because they are not mentioned explicitly in its prior decisions is frivolous. The allegations contained in the second complaint were argued in the first action; the parties are identical. The district court's grant of summary judgment against Harriscom rejected the merits of the contentions. Thus, dismissal of the second complaint on the grounds of *res judicata* was entirely proper. *See Nevada v. United States,* 463 U.S. 110, 129–30, 103 S.Ct. 2906, 2917–18, 77 L.Ed.2d 509 (1983); *Commissioner v. Sunnen,* 333 U.S. 591, 597, 68 S.Ct. 715, 719, 92 L.Ed. 898 (1948).

## CONCLUSION

The judgment appealed from accordingly is affirmed.