INTERNATIONAL BUSINESS MACHINES CORPORATION, Plaintiff–Counterclaim Defendant,

v.

JENNIFER–ASHLEY COMPANY, INC., Defendant–Counterclaim Plaintiff.

No. 94 Civ. 4850 (VLB).

United States District Court, S.D. New York.

Jan. 12, 1995.

---

Paul C. Saunders, Cravath, Swaine & Moore, New York City, for plaintiff.

Edward J.M. Little, Zuckerman, Spaeder, Goldstein, Taylor & Kolker, New York City, for defendant.

## MEMORANDUM ORDER

VINCENT L. BRODERICK, District Judge.

### I

This case arises from a dispute concerning three contracts entered into between the plaintiff, International Business Machines ("IBM"), and defendant, Jennifer–Ashley Company ("JACO"), under which defendant was to distribute surplus parts and materials generated and provided by IBM.

IBM terminated the contracts and brought this action for breach of contract seeking unpaid revenues allegedly due under the contracts. JACO filed eight counterclaims, the eighth of which alleges:

110. A majority of the stock in defendant corporation is owned by a woman, and the defendant corporation is managed and operated by women.

111. Plaintiff terminated its business relationship with defendant because the defendant company is owned, managed and operated by women.

112. Plaintiff thereby violated the New York Human Rights Law, N.Y.Exec.Law § 296.

IBM has moved for judgment on the pleadings under Fed.R.Civ.P. 12(c) as to the above counterclaim.

■■■ IBM's Rule 12(c) motion is treated as embracing a motion to dismiss under Fed. R.Civ.P. 12(b)(6). IBM's motion is granted insofar as it seeks dismissal of the eighth counterclaim. IBM's request for judgment on the pleadings under Fed.R.Civ.P. 12(c) is denied *without prejudice* since neither party has provided material facts necessary to decide the claim on the merits, as is required for a judgment on the pleadings under Fed. R.Civ.P. 12(c). *Sellers v. M.C. Floor Crafters, Inc.*, 842 F.2d 639, 642 (2d Cir.1988).

### II

■■■ JACO was an independent contractor of IBM. Under these circumstances a claim can exist only under N.Y.Exec.Law § 296(13) which provides:

It shall be an unlawful discriminatory practice (i) for any person to discriminate against, boycott or blacklist, or to refuse to buy from, sell to or trade with, any person, because of the race, creed, color, national origin or sex of such person, or of such person's partners, members, stockholders, directors, officers, managers, superintendents, agents, employees, business associates, suppliers or customers, or (ii) for any person wilfully to do any act or refrain from doing any act which enables any such person to take such action. This subdivision shall not apply to:

(a) Boycotts connected with labor disputes; or

(b) Boycotts to protest unlawful discriminatory practices.

The statute contains language which appears to cover individual discrimination without regard to whether any boycott or other combination is involved, but sets forth boycotting as a separate element which would in that event appear to be surplusage, an interpretation courts seek to avoid. Under such circumstances legislative history may be significant, and tends to suggest that a boycott

**1258**

or similar combination is necessary for a violation to be established. *Mehtani v. N.Y. Life Insurance Co.*, 145 A.D.2d 90, 537 N.Y.S.2d 800, 803 (1st Dept.1989). Assembly Debate Transcripts, Plaintiff–Counterclaim Defendant's Reply Memorandum in support of its motion for judgment on the pleadings, Exhibit C, 94 Civ. 4850, Docket # 16.

State court rulings on the subject are conflicting. See generally *Holly v. Pennysaver Corp.*, 98 A.D.2d 570, 471 N.Y.S.2d 611, 613 (2nd Dept.1984); *Mehtani v. N.Y. Life Insurance Co.*, 145 A.D.2d 90, 537 N.Y.S.2d 800, 803 (1st Dept.1989); *West v. Mohawk Commercial Carpets*, 183 A.D.2d 182, 589 N.Y.S.2d 218, 219 (3d Dept.1992); *Harvey v. NYRAC*, 813 F.Supp. 206, 212 (E.D.N.Y. 1993).

It would be inappropriate to construe a statute presenting significant ambiguities based on a bare record providing no indication as to what kind of factual basis, if any, for the alleged violation is present. Adequately detailed allegations or evidence is particularly important in dealing with a case partially of first impression. In particular, information concerning the nature of the allegedly illegal conduct is required in order to evaluate whether or not a "boycott" is essential to a finding of violation by a corporate entity, and if so what scope of refusals to deal are necessary to constitute a boycott.[1]

### III

Because the eighth counterclaim fails to provide sufficient information to allege a violation of the statute, it is dismissed without prejudice pursuant to Fed.R.Civ.P. 12(b)(6). An amended counterclaim may be filed within thirty (30) days of the date of this memorandum order.

**SO ORDERED.**

1. Compare *Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752, 104 S.Ct. 2731, 81 L.Ed.2d 628 (1984); *Gucci v. Gucci Shops, Inc.*, 651 F.Supp. 194 (S.D.N.Y.1986) ("intraenterprise conspiracy" among subdivisions of an enterprise did not constitute a "combination or conspiracy" under the Sherman Antitrust Act, 15 U.S.C. § 1).