Kevin MITCHELL, Plaintiff,

v.

John P. KEANE, Superintendent, Charles Griener, Deputy Superintendent, Captain Stark, Lieutenant Dezayas, Officer Burgess, Lieutenant Wohlrab, Physician Assistant Williams, Sergeant Lauricella, Sergeant Sisco, Sergeant Corcoran, Officer Delutis, Officer Busick, Officer Gonzales, Defendants.

No. 95 Civ. 1144 (RWS).

United States District Court, S.D. New York.

Aug. 19, 1997.

Kevin Mitchell, Pine City, NY, pro se.

Dennis C. Vacco, Attorney General of the State of New York, New York City, for Defendants; Louis L. Bono, of counsel.

## OPINION

SWEET, District Judge.

In this action brought pursuant to 428 U.S.C. § 1983 and the First, Eighth, and Fourteenth Amendments to the United States Constitution, *pro se* plaintiff Kevin Mitchell ("Mitchell") has moved for summary judgment, pursuant to Rule 56, Fed.R.Civ.P., and to amend his complaint, pursuant to Rule 15(a), Fed.R.Civ.P. Defendants John P. Keane ("Keane"), Charles Griener ("Griener"), Captain Stark ("Stark"), Lieutenant Dezayas ("Dezayas"), Officer Burgess ("Burgess"), Lieutenant Wohlrab ("Wohlrab"), Physician Assistant Williams ("Williams"), Sergeant Lauricella ("Lauricella"), Sergeant Sisco ("Sisco"), Sergeant Corcoran ("Corcoran"), Officer DeLutis ("DeLutis"), Officer Busick ("Busick"), and Officer Gonzales

("Gonzales") have moved for judgment on the pleadings dismissing Keane's complaint (the "Complaint") for failure to state a claim, pursuant to Rule 12(c), Fed.R.Civ.P.

As set forth below, Mitchell's motions will be denied, and defendants' motion will be granted in part and denied in part.

### Parties

Mitchell is an inmate in the custody of the New York State Department of Correctional Services ("DOCS"). At all times relevant to his Complaint, he was incarcerated at Sing Sing Correctional Facility ("Sing Sing") in Ossining, New York. He is currently incarcerated at Southport Correctional Facility ("Southport") in Pine City, New York.

Keane was at all relevant times Superintendent of Sing–Sing. Griener was Deputy Superintendent, and the remaining defendants were corrections officers and supervisors at Sing Sing.

### Prior Proceedings

Mitchell filed his original complaint in this action on February 17, 1995. The complaint was subsequently amended to add defendants Corcoran and Burgess. The complaint alleges that the defendants violated his constitutional rights in a series of incidents in December 1994. Specifically, he alleges that: (1) his First Amendment rights were violated by actions taken in retaliation for filing a grievance against an officer; (2) his Eighth Amendment rights were violated by the use of excessive force and failure to provide proper medical care; (3) he was punished more than once for the same infraction, in violation of his Fifth Amendment right to be free of double jeopardy; and (4) that he was deprived of his Fourteenth Amendment right to procedural due process in the hearing that led to his being placed in Involuntary Protective Custody ("IPC") and in being "denied access" to the prison grievance process.

By order dated October 23, Mitchell's motion to amend his complaint for a second time was denied.

Mitchell filed a motion to amend the complaint on January 17, 1997. He submitted the instant motion for summary judgment to the court on February 26, 1997.[1] Mitchell filed a second motion to amend his complaint on May 9, 1997. Defendants filed their cross-motion for judgment on the pleadings on May 19, 1997. Materials were received by the court through June 18, 1997, at which time all motions were deemed fully submitted.[2]

### Facts

In considering a motion to dismiss on the pleadings, the court presumes the factual allegations of the complaint to be true and draws all factual inferences in the plaintiff's favor and against the defendant. *See Cosmas v. Hassett,* 886 F.2d 8, 11 (2d Cir.1989); *Dwyer v. Regan,* 777 F.2d 825, 828–29 (2d Cir.1985). In considering a motion for summary judgment, a court must resolve all factual ambiguities and draw all reasonable inferences against the moving party. *See Brady v. Town of Colchester,* 863 F.2d 205, 210 (2d Cir.1988); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). The facts set forth below are drawn primarily from Mitchell's complaint. Factual matters outside of the pleadings are so designated and are not considered in decid-

1. Although an affirmation of service was enclosed with the motion papers, the Attorney General apparently did not receive the motion. Moreover, the papers were sent directly to chambers, rather than being filed with the clerk of court. A copy of the motion papers was forwarded to the Attorney General, who was granted time to respond.

2. Mitchell has submitted another document, styled a motion to amend (adding the Attorney General as a defendant, as does the first motion to amend considered in this opinion) and to "change venue," which was sent directly to chambers and to which the Attorney General has not replied. Three other letters were sent requesting "assistance," because of interference with his case at the correctional facilities, and requesting an extension of forty-five days to reply to defendants' motion because he was having difficulty sending overweight mail. Since Mitchell apparently has not had difficulty sending other correspondence to this court, his claim that he is not able to meet the filing deadline because of mail problems is suspect. Moreover, Mitchell's claims have been carefully considered, and additional briefing would not assist the court. Accordingly, Mitchell's request for additional time is denied. Continued frivolous filings with the court may result in sanctions.

ing defendants' motion for judgment on the pleadings.

On December 2, 1994, Mitchell filed a grievance against DeLutis at Sing Sing. Superintendent Keane appointed Lauricella to investigate the grievance. In the morning of December 8, 1994, Lauricella interviewed Mitchell in his cell regarding the grievance. Shortly thereafter, when Mitchell was outside of his cell, DeLutis and Gonzales appeared. Gonzales allegedly told Mitchell to "clear the gallery." As Mitchell approached DeLutis and Gonzales, DeLutis allegedly screamed at him to clear the gallery and said, "That was some bullshit you wrote me up for." DeLutis allegedly obstructed Mitchell's egress from the gallery. An altercation ensued, in which DeLutis allegedly grabbed and attempted to strike Mitchell. Mitchell claims to have ducked and grabbed DeLutis' legs to protect himself. In his summary judgment submissions, Mitchell claims that a "rumble took shape" and DeLutis fell backwards down the stairs, whereupon Mitchell became frightened and ran down the gallery, pursued by DeLutis, Lauricella, Gonzales, Busick and Keleher. He was ultimately subdued by force, treated for cuts and bruises and placed in the Special Housing Unit ("SHU").

Later in the day on December 8, 1994, Mitchell was taken to meet with officials of the Bureau of Criminal Investigation. He was placed in shackles in his cell by Burgess, who was supervised by Corcoran. Burgess allegedly placed his baton in Mitchell's shackles and twisted it, which cut off circulation to Mitchell's hands and caused bruising and severe back pain. Stark allegedly ordered that the shackles remain on despite Mitchell's pain.

Mitchell received medical treatment from Williams, a physician's assistant at Sing Sing. He alleges that Williams refused to x-ray his back and did not fill out an injury report.

On December 9, 1994, Mitchell received a "Tier III" misbehavior report alleging that he assaulted DeLutis. This misbehavior report was allegedly dismissed. On December 18 and 19, 1994, Mitchell alleges he received two more misbehavior reports arising from the December 8 incident. These misbehavior reports were prepared and/or signed by defendants Busick, DeLutis and Dezayas. Each report recommended that Mitchell be placed in Involuntary Protective Custody ("IPC").

On December 16, 1994, Mitchell filed a grievance regarding these events. Between December 21 and 24, 1994, Mitchell was placed in confinement and denied commissary and exercise privileges by Sisco. Mitchell complained about his treatment to Keane on December 22, 1994. On December 24, 1994, Wohlrab presided over a protective custody hearing and determined that Mitchell should remain in IPC. Mitchell asserts that Wohlrab's decision was predetermined, but in support of this contention he alleges only that the first misbehavior report was dismissed.

According to records submitted by defendants, the hearing results were reversed on February 27, 1997, on the grounds that Mitchell's status should have been determined in a disciplinary proceeding, rather than a protective custody hearing. All records pertaining to the hearing were ordered expunged.

Defendants have also submitted public records documenting the subsequent trial, conviction and sentencing of Mitchell for assaulting DeLutis during the December 8, 1994 incident. He was tried in April 1996 and sentenced on October 7, 1996 in Westchester County Court.

In his first motion to amend the complaint, Mitchell alleges that he was "set up" by prison officials and that these officials, along with unnamed members of the Attorney General's office, used the criminal prosecution to intimidate him into dropping his civil claims. He also alleges that the "authorities are promoting prison uprising, allege attempts to start racial wars, inmate against inmate, guard against inmate, destruction/death; allege [extraordinary] tactics to use family of deceased, under corruption wrongful death suit ..." He alleges that officer DeLutis was involved in initiating the criminal prosecution, but does not identify how any of the other existing or additional defendants were involved in any of the alleged actions.

In his second motion to amend, Mitchell alleges that, while confined at Southport: (1) he was "subjected to harsh resentment elevated to a series of constitutional violation[s]" by unspecified Southport personnel; (2) he was "maliciously oppressed;" (3) unspecified prison authorities fomented racial wars, searched cells, confiscated books, and sexually harassed prisoners during strip searches; (4) unspecified prison authorities reduced heat and denied extra blankets, causing aching limbs and his "blood level to drop;" (5) his mail privileges were curtailed by officers McGinnis and Meck; (6) the law library and staff are inadequate; (7) complaints about cracks in the ceiling through which urine and feces leaked were ignored; (8) recreation time was reduced to less than one hour; and (9) inmates were fed on dirty feeding trays.

## Discussion

### I. Legal Standards

#### A. Rule 12(c) Standards

■ The defense of failure to state a claim, ordinarily made pursuant to Rule 12(b)(6), may also be raised in a motion for judgment on the pleadings pursuant to Rule 12(c). *National Ass'n of Pharmaceutical Mfrs., Inc. v. Ayerst Laboratories*, 850 F.2d 904, 909 n. 2 (2d Cir.1988); *International Business Machines, Corp. v. Jennifer–Ashley Co.*, 872 F.Supp. 1256, 1257 (S.D.N.Y. 1995). The moving party bears a substantial burden of proof on such a motion. A court may not dismiss a complaint unless the movant demonstrates "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 249–50, 109 S.Ct. 2893, 2905–06, 106 L.Ed.2d 195 (1989); *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984); *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). In determining the sufficiency of the complaint, consideration is limited to the factual allegations it contains. *See Valmonte v. Bane*, 18 F.3d 992, 998 (2d Cir.1994).

■ *Pro se* complaints are to be construed particularly liberally on a motion to dismiss. *See Haines v. Kerner*, 404 U.S. 519, 520, 92 S.Ct. 594, 595, 30 L.Ed.2d 652 (1972); *Platsky v. Central Intelligence Agency*, 953 F.2d 26, 28 (2d Cir.1991). A *pro se* litigant's submissions are to be interpreted "to raise the strongest arguments they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir.1994).

■ There is no heightened pleading burden under Section 1983. *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 168, 113 S.Ct. 1160, 1163, 122 L.Ed.2d 517 (1993). However, courts assessing prisoners' claims under the civil rights acts, including § 1983, will dismiss a complaint that "consist[s] of nothing more than naked assertions, and set[s] forth no facts upon which a court could find a [constitutional] violation." *Martin v. New York State Dep't of Mental Hygiene*, 588 F.2d 371, 372 (2d Cir.1978); *see also Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir.1983) (complaint alleging retaliation in "wholly conclusory terms" may be dismissed on pleadings). It is important to "weed out" frivolous and insubstantial claims from the large volume of civil rights cases so that the courts can focus their resources on the legitimate claims of mistreated prisoners. *See Johnson v. New York City Transit Authority*, 639 F.Supp. 887, 892 (E.D.N.Y.1986), *aff'd in part, vac. in part*, 823 F.2d 31 (2d Cir. 1987).

#### B. Summary Judgment Standards

The motion for summary judgment is "an integral part" of the Federal Rules of Civil Procedure and facilitates the overall purpose of the Rules, namely, "to secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). A motion for summary judgment may be granted only when there is no issue of material fact remaining for trial and the moving party is entitled to judgment as a matter of law. *See* Rule 56(c), Fed. R.Civ.P.; *Silver v. City Univ.*, 947 F.2d 1021, 1022 (2d Cir.1991). If, when "[v]iewing the evidence produced in the light most favorable to the nonmovant ... a rational trier could not find for the nonmovant, then there is no

genuine issue of material fact and entry of summary judgment is appropriate." *Binder v. Long Island Lighting Co.,* 933 F.2d 187, 191 (2d Cir.1991). If, on the other hand, a reasonable finder of fact could return a verdict for the nonmoving party, there is a genuine factual dispute and summary judgment should not be granted. *See Zeevi v. Union Bank of Switzerland,* No. 89 Civ. 4637, 1992 WL 8347, *4 (S.D.N.Y. Jan.29, 1992). "[T]he trial court's task at the summary judgment stage of litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them." *Gallo v. Prudential Residential Servs., Ltd.,* 22 F.3d 1219 (2d Cir.1994).

While all reasonable ambiguities and inferences should be resolved against the moving party, those inferences must be supported by affirmative facts and must be based on relevant, admissible evidence. Fed.R.Civ.P. 56. In order to raise a material issue of fact, affidavits must be based on personal knowledge. *Harriscom Svenska, AB v. Harris Corp.,* 3 F.3d 576 (2d Cir.1993); *Estate of Detwiler v. Offenbecher,* 728 F.Supp. 103 (S.D.N.Y.1989).

## II. The Retaliation Claim Will Be Dismissed

Mitchell contends that DeLutis, Gonzales, Busick and Lauricella violated his First Amendment right to freedom of expression by filing misbehavior reports falsely charging him with assaulting DeLutis on December 8, 1994, in retaliation for Mitchell's grievance against DeLutis. However, this claim is collaterally estopped by Mitchell's October 1996 criminal conviction for assaulting DeLutis on December 8, 1994.

█ The Full Faith and Credit statute, 28 U.S.C. § 1738, provides that a federal court must give state judicial proceedings "the same full faith and credit ... as they have by law or usage in the courts of such state." *Temple of Lost Sheep, Inc. v. Abrams,* 930 F.2d 178, 183 (2d Cir.), *cert. denied,* 502 U.S. 866, 112 S.Ct. 193, 116 L.Ed.2d 153 (1991). Accordingly, a prior state judicial proceeding is entitled in a subsequent federal court proceeding to the same preclusive effect as it

would have under the law of the rendering state. *Migra v. Warren City Sch. Dist. Bd. of Educ.,* 465 U.S. 75, 81, 104 S.Ct. 892, 896, 79 L.Ed.2d 56 (1984); *Allen v. McCurry,* 449 U.S. 90, 96, 101 S.Ct. 411, 415, 66 L.Ed.2d 308 (1980); *West v. Ruff,* 961 F.2d 1064, 1065 (2d Cir.1992).

█ Under New York law, the doctrine of collateral estoppel " 'precludes a party from relitigating in a subsequent action or proceeding an issue clearly raised in a prior action or proceeding and decided against the party or those in privity, whether or not the tribunals or causes of action are the same.' " *Burgos v. Hopkins,* 14 F.3d 787, 792 (2d Cir.1994) (quoting *Ryan v. New York Tel. Co.,* 62 N.Y.2d 494, 499, 478 N.Y.S.2d 823, 467 N.E.2d 487 (1984)); *accord Murphy v. Gallagher,* 761 F.2d 878, 881 (2d Cir.1985).

█ There are two prerequisites to the invocation of collateral estoppel: (1) there must be "an identity of issue which has necessarily been decided in the prior action and is decisive of the present action," and (2) there must have been "a full and fair opportunity to contest the decision said to be controlling." *See Schwartz v. Public Administrator,* 24 N.Y.2d 65, 71, 298 N.Y.S.2d 955, 246 N.E.2d 725 (1969); *Kaufman v. Eli Lilly & Co.,* 65 N.Y.2d 449, 455, 492 N.Y.S.2d 584, 482 N.E.2d 63 (1985); *Colon v. Coughlin,* 58 F.3d 865, 869 (2d Cir.1995). Collateral estoppel applies "only if it is quite clear that these requirements have been satisfied, lest a party be 'precluded from obtaining at least one full hearing on his or her claim.' " *Colon,* 58 F.3d at 869 (quoting *Gramatan Home Investors Corp. v. Lopez,* 46 N.Y.2d 481, 485, 414 N.Y.S.2d 308, 386 N.E.2d 1328 (1979)).

In *Ryan,* the New York Court of Appeals enumerated factors properly considered in evaluating whether a full and fair opportunity to litigate was present: "the nature of the forum and the importance of the claim in the prior litigation, the incentive and initiative to litigate and the actual extent of litigation, the competence and expertise of counsel, the availability of new evidence [and] the differences in the applicable law." *Ryan,* 62 N.Y.2d at 501, 478 N.Y.S.2d 823, 467 N.E.2d 487. The state Court of Appeals has also

emphasized that the question "whether a party has had a full and fair opportunity to contest a prior determination cannot be reduced to a formula," but instead "involves a practical inquiry into the 'realities of the litigation.'" *Gilberg v. Barbieri*, 53 N.Y.2d 285, 292, 441 N.Y.S.2d 49, 423 N.E.2d 807 (1981) (quoting *Schwartz*, 24 N.Y.2d at 72, 298 N.Y.S.2d 955, 246 N.E.2d 725).

■ Here, the issue of whether Mitchell assaulted DeLutis is essential to his current claim that the officers filed false disciplinary charges against him in retaliation for his grievance. If he in fact assaulted DeLutis, the charges made by the defendants were not false, and thus not actionable. Of course, the question of whether Mitchell assaulted DeLutis was the central issue in the criminal prosecution. Thus, there is an identical issue necessarily decided in the prior criminal action that is decisive of the present action.

Mitchell had a full and fair opportunity to litigate the assault issue in the state criminal proceeding. He was tried and convicted in a state court of general jurisdiction, with the full panoply of procedural protections available to criminal defendants. The potential imposition of criminal penalties provided incentive to litigate vigorously. He was represented by counsel, and there is no indication counsel was less than competent.

Accordingly, Mitchell's retaliation claim will be dismissed.

### III. *The Eighth Amendment/Excessive Force Claim: The Motion to Dismiss Will Be Granted in Part & Denied in Part; The Motion for Summary Judgment Will Be Denied*

Mitchell alleges that Burgess, under Corcoran's supervision, twisted his shackles, resulting in bruising and severe back pain. He contends that this action violated his Eighth Amendment right to be free from cruel and unusual punishment.

■ Under the Eighth Amendment, the use of excessive force against prisoners may constitute "cruel and unusual punishment." *Hudson v. McMillian*, 503 U.S. 1, 5, 112 S.Ct. 995, 997, 117 L.Ed.2d 156 (1992). A plaintiff need not allege "serious" injury to

state an excessive force claim. *Id.* at 7, 112 S.Ct. at 999. However, the Eighth Amendment does not protect against de minimis or reasonable uses of force. *Id.* at 9–10, 112 S.Ct. at 1000–01; *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir.), *cert. denied*, 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973).

■ The test of whether the use of force violates the Eighth Amendment is "whether force was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 6–7, 112 S.Ct. at 998–99. Application of this test involves examining both the "subjective" and "objective" components of the claim. *Id.* at 8–9, 112 S.Ct. at 999–1000; *Branham v. Meachum*, 77 F.3d 626, 630 (2d Cir.1996). The objective components of a claim may include allegations of the type and extent of the force used, the nature and seriousness of any injury that may have occurred, and other objective indicia of the "excessiveness" of the force. *Branham*, 77 F.3d at 630. The nature of the disturbance to which prison officials are responding will also be relevant to the question of whether the force used was "excessive." *See Hudson*, 503 U.S. at 7, 112 S.Ct. at 999 (proper to evaluate need for force and relationship between need and amount of force used). The subjective component relates to whether the defendant possessed a "wanton" state of mind while applying force. *Branham*, 77 F.3d at 630. The objective allegations of a claim may give rise to an inference of subjective wantonness. *See Hudson*, 503 U.S. at 7, 112 S.Ct. at 999 (extent of injury is factor that may suggest whether force could plausibly be thought necessary or instead evinces wantonness).

■ Here, Mitchell's allegations state a claim of excessive use of force against Burgess and Corcoran, who were both present when Burgess twisted his baton in the chain of Mitchell's shackles. Considering only the pleadings, as we must on defendants' motion to dismiss, it appears that Burgess' actions inflicted, if not a serious injury, at least considerable pain. Twisting a baton in a restrained prisoner's shackles does not appear, on its face, to serve any useful function

other than to inflict pain. Defendants contend that in light of the assault on DeLutis earlier in the day on December 8, 1994, the use of force was warranted. However, there is no indication that Mitchell, who had already been subdued and returned to his cell after the assault, was being aggressive or putting up any resistance at the time Burgess twisted the baton as he transported Mitchell from his cell to speak with investigators. While the Eighth Amendment permits the use of force to subdue a violent prisoner, it does not allow an officer to inflict pain in retaliation for a previous episode of violence.

Defendants argue that Mitchell has failed to state a claim as to Corcoran, who was not alleged to have personally inflicted any injury on Mitchell.

 The personal involvement of the defendant in the alleged constitutional violation is a prerequisite to an award of damages under § 1983. *See Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994); *Moffitt v. Town of Brookfield,* 950 F.2d 880, 885 (2d Cir.1991). Supervisory officials cannot be held liable for the acts of their subordinates solely on a theory of respondeat superior; a showing of some personal responsibility of the supervisor is required. *Glick,* 481 F.2d at 1034.

 A supervisory official, such as Corcoran, may be "personally involved" in the constitutional deprivation in one of several ways. He may have: (1) directly participated in the infraction, (2) failed to remedy a violation of which he had been informed, (3) created or allowed to continue a custom or policy under which the unconstitutional practice occurred, or (4) acted with gross negligence in supervising the subordinates who committed the infraction. *Williams v. Smith,* 781 F.2d 319, 323–24 (2d Cir.1986).

 Drawing all inferences in Mitchell's favor, the allegation that Corcoran was present when Burgess was twisting Mitchell's shackles states a claim of supervisory liability. If Corcoran was aware of and did not

attempt to stop Burgess' illegal action, he was grossly negligent in his supervision. An inference that Corcoran was aware of the infraction may be drawn from his presence at the time of the incident. Mitchell alleges that Corcoran did nothing to stop Burgess. Accordingly, the claims against Burgess and Corcoran will not be dismissed.[3]

However, without a fuller development of the factual record regarding Mitchell's behavior at the time of the incident, the court cannot say that Burgess' action was unreasonable as a matter of law. Moreover, Mitchell himself has given slightly different accounts of the incident in his numerous submissions, thus creating a factual issue, such that summary judgment in Mitchell's favor on this claim is unwarranted at this time.

 The allegations that Stark and Griener failed to remove the shackles does not state a claim. Although the shackles may have caused Mitchell continuing discomfort, his recent violent behavior and the general need for prison security amply justified such prophylactic restraints during his transportation and interview with investigators. Thus, the Eighth Amendment claims against Griener and Stark will be dismissed.

The parties will be granted leave at the close of discovery to move for summary judgment on the Eighth Amendment claim against Burgess and Corcoran.

## IV. *The Eighth Amendment/Medical Treatment Claim Will Be Dismissed*

Mitchell also alleges that Williams did not provide him with adequate medical treatment. Specifically, he contends that Williams' failure to take an x-ray of his back and failure to make an injury report violate his Eighth Amendment Rights.

 A plaintiff may state an Eighth Amendment claim when he alleges that prison officials denied, delayed or interfered with necessary medical treatment with deliberate

---

**3.** It appears that Corcoran has not been personally served with the complaint in this action. Rather than dismiss the complaint as to Corcoran with leave to reopen upon service, Mitchell is hereby directed to effect service upon Corcoran within thirty (30) days of the date this order is entered. Failure to effect service in this time will result in dismissal of the claim as to Corcoran.

indifference to his serious medical needs. *Estelle v. Gamble,* 429 U.S. 97, 103, 97 S.Ct. 285, 290, 50 L.Ed.2d 251 (1976). However, "only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment claim.... Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are serious." *Hudson,* 503 U.S. at 9, 112 S.Ct. at 1000 (quotations omitted).

■ Thus, the medical condition for which the plaintiff alleges he was denied treatment must be "sufficiently serious" to raise Eighth Amendment concerns. *Hathaway v. Coughlin,* 37 F.3d 63, 66 (2d Cir.1994), *cert. denied,* 513 U.S. 1154, 115 S.Ct. 1108, 130 L.Ed.2d 1074 (1995). Ordinarily, a health condition is sufficiently serious to state a claim when it involves some urgency, risk of degeneration or death, or extreme pain. *Id. (quoting Nance v. Kelly,* 912 F.2d 605, 607 (2d Cir.1990) (Pratt, J. dissenting)).

In addition to alleging a sufficiently serious medical condition, a plaintiff must allege that the prison official knew of and disregarded an excessive risk to the plaintiff's health and safety. *Hathaway,* 37 F.3d at 66. There must be allegations that the official was aware of facts from which he or she should have recognized the existence of such a risk. *Id.*

■ Here, Mitchell does not allege that he received no treatment for his injuries.[4] Rather, he asserts that Williams should have ordered an x-ray. However, the Supreme Court has explicitly stated that "[a] medical decision not to order an x-ray ... does not represent cruel and unusual punishment." *Estelle,* 429 U.S. at 107, 97 S.Ct. at 292. Likewise, Williams' failure to fill out an injury report does not state an Eighth Amendment claim. An injury report is not medically necessary for a minimally civilized life.

The Eighth Amendment medical treatment claim will be dismissed.

## V. *The Procedural Due Process Claims Will Be Dismissed*

Mitchell contends that his procedural due process rights were violated by his confinement to IPC for three days prior to his hearing.

■ Prisoners facing serious misconduct charges and significant punishment are entitled to some basic procedural safeguards, including notice of charges, an opportunity to be heard and a written decision justifying the imposition of punishment. *See Wolff v. McDonnell,* 418 U.S. 539, 555–57, 563, 94 S.Ct. 2963, 2974–75, 2978, 41 L.Ed.2d 935 (1974).

■ To state a procedural due process claim challenging a disciplinary action, a prisoner must allege both that he was deprived of a liberty interest cognizable under the Due Process Clause, and that he was deprived of that interest without the requisite process. *See Wallace v. Conroy,* 945 F.Supp. 628, 632 (S.D.N.Y.1996). A cognizable interest may arise in two ways. First, the Due Process Clause may, of its own force, protect a prisoner from a restraint on his freedom that exceeds the sentence in a manner that is entirely and unexpectedly divergent from the sentence of imprisonment. *See, e.g., Vitek v. Jones,* 445 U.S. 480, 493, 100 S.Ct. 1254, 1263, 63 L.Ed.2d 552 (1980) (transfer to a mental hospital); *Washington v. Harper,* 494 U.S. 210, 221–222, 110 S.Ct. 1028, 1036, 108 L.Ed.2d 178 (1990) (involuntary administration of psychotropic drugs). Second, state law may create a liberty interest in freedom from restraint, but only if such restraint amounts to an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner,* 515 U.S. 472, 483, 115 S.Ct. 2293, 2300, 132 L.Ed.2d 418 (1995); *see also Wallace v. Conroy,* 945 F.Supp. at 633.

■ The court's role in procedural due process claims challenging prison disciplinary actions is to balance the penal system's legitimate institutional goals against the inmate's constitutional protections. *Wolff,* 418 U.S. at 556, 94 S.Ct. at 2974. However, a federal

---

**4.** In fact, he admits in his motion papers that he was prescribed a pain killer for his back.

court should be reluctant to interfere in matters of prison administration and confinement. *Sandin,* 515 U.S. at 481, 115 S.Ct. at 2299 In *Sandin,* the Supreme Court concluded that a thirty-day disciplinary confinement did not amount to an atypical and significant hardship triggering a right to procedural protections such as those required by *Wolff. Id.* at 2301, 515 U.S. at 485; *see also Rivera v. Coughlin,* 92 Civ. 3404(DLC), 1996 WL 22342, at *5 (S.D.N.Y. Jan.22, 1996) (holding that 89 days keep-lock did not constitute an atypical or significant hardship sufficient to create a liberty interest, and collecting other cases holding that from 11 days in keep-lock up to 270 days confinement in a Special Housing Unit did not impose an atypical hardship).

Mitchell's three days of confinement to special protective custody does not trigger due process scrutiny. Indeed prehearing administrative segregation for several days without a hearing has been upheld, because such limited restraint did not require due process protections. *See Hewitt v. Helms,* 459 U.S. 460, 479, 103 S.Ct. 864, 875, 74 L.Ed.2d 675 (1983) (five days administrative confinement does not trigger full due process protection); *see also Bolden v. Alston,* 810 F.2d 353, 357–58 (2d Cir.), *cert. denied,* 484 U.S. 896, 108 S.Ct. 229, 98 L.Ed.2d 188 (1987).

Mitchell also claims that he was denied due process at the IPC hearing, because Wohlrab was biased against him. However, he makes no factual allegations from which an inference of bias can be drawn. While Mitchell calls attention to the fact that a previous misbehavior report was withdrawn, that fact does not suggest that a hearing officer considering a later report was biased.

Mitchell also claims that he was denied access to the prison's grievance procedure. However, it appears from the submissions before the court that Mitchell filed grievances, had them referred to a prison official, and received a letter reporting that there was no evidence to substantiate his complaints. Mitchell's dissatisfaction with this response does not constitute a cause of action.

For these reasons, Mitchell's procedural due process claims will be dismissed.

## VI. The Double Jeopardy Claim Will Be Dismissed

Mitchell contends that the multiple disciplinary reports, the imposition of protective custody and the subsequent criminal prosecution constituted a violation of the Double Jeopardy Clause.

However, "[i]t is ... well settled that 'punishment' imposed by prison authorities for infractions of prison regulations does not generally bar a subsequent criminal prosecution for the same conduct." *United States v. Hernandez–Fundora,* 58 F.3d 802, 806 (2d Cir.), *cert. denied,* 515 U.S. 1127, 115 S.Ct. 2288, 132 L.Ed.2d 290 (1995) (citing *United States v. Rising,* 867 F.2d 1255, 1259 (10th Cir.1989); *Kerns v. Parratt,* 672 F.2d 690, 691–92 (8th Cir.1982); *United States v. Stuckey,* 441 F.2d 1104, 1105–06 (3d Cir.), *cert. denied,* 404 U.S. 841, 92 S.Ct. 136, 30 L.Ed.2d 76 (1971)); *see also United States v. Newby,* 11 F.3d 1143, 1144–45 (3d Cir.1993), *cert. denied,* 511 U.S. 1087, 114 S.Ct. 1841, 128 L.Ed.2d 468, 513 U.S. 834, 115 S.Ct. 111, 130 L.Ed.2d 58 (1994).

Thus, jeopardy never attached in Mitchell's disciplinary proceedings, and his right not to be punished twice for the same conduct is not implicated.

## VII. The Motions to Amend Will Be Denied

Rule 15(a) provides that leave to amend a complaint "shall be freely given when justice so requires." The federal courts, however, have interpreted Rule 15 to permit such amendments only when (1) the party seeking the amendment has not unduly delayed, (2) when that party is not acting in bad faith or with a dilatory motive, (3) when the opposing party will not be unduly prejudiced by the amendment, and (4) when the amendment is not futile. *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962); *see Mackensworth v. S.S. Am. Merchant,* 28 F.3d 246, 251 (2d Cir.1994); *Prudential Ins. Co. v. BMC Indus., Inc.,* 655 F.Supp. 710, 711 (S.D.N.Y.1987).

■ An amendment is considered futile if the amended pleading fails to state a claim or would be subject to a successful motion to dismiss on some other basis. *See, e.g., S.S. Silberblatt, Inc. v. East Harlem Pilot Block,* 608 F.2d 28, 42 (2d Cir.1979); *Freeman v. Marine Midland Bank–New York,* 494 F.2d 1334, 1338 (2d Cir.1974).

As stated above, a defendant's personal involvement in a constitutional violation must be alleged in order to state a claim. With the exception of the claims against DeLutis, Mitchell's first motion to amend does not identify which defendants are involved in which alleged misbehavior, and so the motion to amend must be denied as to those defendants.

■ The claim against DeLutis alleges that the criminal prosecution was brought to intimidate him into withdrawing his civil claims. Such a claim of malicious prosecution brought under Section 1983 is governed by state law. *Russell v. Smith,* 68 F.3d 33, 36 (2d Cir.1995); *Janetka v. Dabe,* 892 F.2d 187, 189 (2d Cir.1989). To establish a malicious prosecution claim under New York law, a plaintiff must establish four separate elements: (1) the initiation or continuation of a criminal proceeding against the plaintiff; (2) the termination of the proceeding in the plaintiff's favor; (3) a lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions. *Russell,* 68 F.3d at 36; *Posr v. Doherty,* 944 F.2d 91, 100 (2d Cir.1991); *Pandolfo v. U.A. Cable Sys.,* 171 A.D.2d 1013, 568 N.Y.S.2d 981, 982 (4th Dep't 1991).

Here, Mitchell was convicted of the assault charges. Thus, having failed to allege that the criminal action was terminated in Mitchell's favor, Mitchell's motion to amend to add this claim against DeLutis will be denied.

Mitchell's second motion to amend is similarly defective. His vague allegations of "harsh resentment" and "malicious oppression" do not state any cognizable injury. Mitchell does not identify the benighted officials who instigated racial wars, searched cells, confiscated books, or sexually harassed prisoners during strip searches. He does not even allege that he himself was a victim of these foul deeds.

Mitchell's complaint that his mail privileges were curtailed does not state a claim, because he does not specify how his privileges were curtailed.

■ His remaining complaints (about the climate control problems, the inadequacy of the law library, the sewage dripping through the ceiling, the reduction in recreation time, and the dirty meal trays) may be read as an Eighth Amendment challenge to the conditions of his confinement. *See Helling v. McKinney,* 509 U.S. 25, 31, 113 S.Ct. 2475, 2479, 125 L.Ed.2d 22 (1993) (conditions of confinement subject to scrutiny under Eighth Amendment).

■ To prevail on a claim under the Eighth Amendment based on prison conditions, a plaintiff must plead and prove both a subjective element (*i.e.,* a culpable state of mind on the part of the defendants) and that the objective conditions were "sufficiently serious" to invoke the Eighth Amendment's protections. *Wilson v. Seiter,* 501 U.S. 294, 298–99, 111 S.Ct. 2321, 2323–25, 115 L.Ed.2d 271 (1991). With respect to the subjective component, the plaintiff must prove that prison officials acted with "deliberate indifference." *Id.* at 297, 111 S.Ct. at 2323. As for the objective component, "the deprivation alleged must be in objective terms 'sufficiently serious' such that the deprivation 'den[ied] the minimal civilized measure of life's necessities.'" *Branham,* 77 F.3d at 630–31 (*quoting Wilson,* 501 U.S. at 298, 111 S.Ct. at 2324).

With the exception of the dripping sewage, none of the deprivations, viewed objectively, amounts to a denial of the minimal necessities of civilized life. Mitchell does not identify the person to whom he complained about the sewage, so it is impossible to determine who, if anyone, had the required culpable mental state.

Accordingly, Mitchell's motions to amend will be denied.

### Conclusion

For the reasons set forth above, all of Mitchell's claims, with the exception of the Eighth Amendment excessive force claim

against Burgess and Corcoran, are hereby dismissed. The claim against Corcoran will be dismissed, unless Mitchell serves the complaint upon him within thirty (30) days of the entry of this order. Mitchell's motions for summary judgment and for leave to amend are hereby denied. The parties are granted leave to renew motions for summary judgment on the excessive force claim at the close of discovery.

Mitchell is also warned that continued vexatious and frivolous filings may result in the imposition of sanctions, possibly including dismissal of his remaining claim.

It is so ordered.